853 F.Supp. 1402 (1994)
HILLSBOROUGH COUNTY, et al., Plaintiffs,
v.
A & E ROAD OILING SERVICE, INC., et al., Defendants.
No. 92-1648-CIV-T-17.
United States District Court, M.D. Florida, Tampa Division.
April 26, 1994.
*1403 *1404 Andrea E. Zelman, Icard, Merrill, Cullis, Timm, Furen, & Ginsburg, P.A., Tampa, FL, William W. Merrill, III, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, FL, for Hillsborough County, Reynolds Metal Co.
William Cook Ballard, Fisher & Sauls, P.A., St. Petersburg, FL, for A & E Road Oiling Service, Inc.
Emmett Abdoney, Tampa, FL, for Acme Sanitary Services, Inc.
William Barrett Taylor, IV, Macfarlane, Ausley, Ferguson & McMullen, Tampa, FL, for Acorn Contractors, Bingham Septic Tank, Dolfran, Lykes Bros., Morrison's Inc., Nuckles Septic Tank Service, Inc.
Julie A. Weisman, Swidler & Berlin, Washington, DC, for American Cyanamid Co.
Robert W. Boos, Honigman, Miller, Schwartz & Cohn, Tampa, FL, for Ashland Petroleum, JoJos Restaurants, W.R. Grace & Co.
John Wesley Wilcox, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for Bay Harbor Inn of Tampa, Inc., Cafe Don Jose, Inc., Sterling Cleaners, Tampa Port Committee for Spillage Control.
Lyle Wethington, Law Office of Lyle Wethington, Pinellas Park, FL, for Bay Area Septic Systems.
V. James Dickson, Mitchell Eric Cook, Robbins, Gaynor & Bronstein, P.A., St. Petersburg, FL, for Bayfront Medical Center, Inc.
James Michael Porter, Holland & Knight, Miami, FL, for Bridgestone/Firestone Inc., Coastal Detroit Diesel/Allison, Cralle-Hall Motor Co., GAF Corp., General Elec. Co., IMC Fertilizer, Inc., Laidlaw Waste System, M & T Corp., Mobil Oil Corp., Owens-Illinois, Inc., Proler Intern. Corp., Shell Oil Co., Tampa Elec. Co.
Robert E. Hogfoss, Catherine D. Little, Hunton & Williams, Atlanta, GA, for Bryson Environmental Service, Inc.
Peter James Hobson, Tampa, FL, for CDB Pizza, Inc.
Joseph W. Clark, William A. Gillen, Jr., Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, Charles H. Tisdale, Jr., C. Paul Chalmers, King & Spalding, Atlanta, GA, for Cargill Fertilizer, Inc.
John A.C. Guyton, III, Alley & Ingram, Tampa, FL, for Central Oil Co.
Daniel E. Vineyard, Law Office of Daniel E. Vineyard, Houston, TX, for Chevron USA, Inc., Gulf Oil Corp.
Clemons Septic Cleaners, pro se.
Neil O'Kane Bowman, Coastal Fuels Marketing, Inc., Miami, FL, for Coastal Fuels Marketing, Inc.
Joseph W. Clark, William A. Gillen, Jr., Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, for Continental Can Co.
Enola Tobi Brown, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, for Countryside Country Club, Inc., Hillsborough Community College, Hillsborough County Bd. of Public Instruction.
Dale William Vash, Ronald H. Noble, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for Cummins Florida, Inc., Tank Welding and Service Co., Inc.
Timothy D. Hoffman, Coolidge, Wall, Womsley & Lombard, Dayton, OH, for ESI Meats, Inc., Ponderosa Restaurant, S & A Restaurant Corp.
Kelly H. Scoffield, T. Dean Simmons, Exxon Co., U.S.A., Houston, TX, for Exxon Co., U.S.A.
James Michael Porter, Holland and Knight, James P. Ahrens, Law Office of James F. Ahrens, Miami, FL, for Florida Power Corp.
David J. Beasley, Florida Power & Light Co., Miami, FL, for Florida P & L.
Martin Lee Garcia, Karen E. Ross, Hill, Ward & Henderson, P.A., Tampa, FL, for Fredco, Inc.
Robert H. Mackenzie, Law Office of Robert H. Mackenzie, Wesley Chapel, FL, for Gaffin Environmental Services, Inc.
Walter C. Hall, Jr., Law Office of Walter C. Hall, Jr., Clearwater, FL, for Golden Triangle Portable Toilet Co., Inc.
*1405 Dominick Joseph Graziano, Hearne, Graziano, Nader & Buhr, P.A., Tampa, FL, Charles H. Pangburn, III, Kim K. Burke, Taft, Stettinius & Hollister, Cincinnati, OH, for Helena Chemical Co.
Howard S. Seitzman, Brown, McCarroll & Oaks Hartline, Austin, TX, for Humana, Inc.
Reynold Laurence Caleen, Jr., Oertel, Hoffman, Fernandez, Cole & Edenfield, P.A., Tallahassee, FL, for International Petroleum Corp., MRI Corp.
Jimbo's Pit Bar-B-Que of Tampa, Inc., pro se.
Harold H. Lehman, Lakeland, FL, for Jimbo's Pit Bar-B-Que of Tampa, Inc.
Karen E. Ross, Hill, Ward & Henderson, P.A., Tampa, FL, for Latin Village Cafe., Montgomery Ward & Co.
Latin Village Cafe, pro se.
Lee Kirk and Sons, pro se.
Mark McRae Schabacker, Arnold, Morris, Frank & Schabacker, P.A., George F. Gramling, III, Frank, Schabacker, Gramling, Simmons & Dunlap, Tampa, FL, for Leto Sanitary Service Co.
Kenneth F. Darrow, Miami, FL, for Lum's Restaurant Corp.
Debra Crenshaw, Tampa, FL, for Mary's Miracle Restaurant.
Stanley Edward Marable, Sarasota, FL, for Mike's Septic Tank Service, Inc.
William Barrett Taylor, IV, Macfarlane, Ausley, Ferguson & McMullen, Karen E. Ross, Hill, Ward & Henderson, P.A., Tampa, FL, for Miller Septic Tank Co., Inc.
Anthony J. Abate, Abel, Band, Russell, Collier, Pitchford & Gordon, Chartered, Sarasota, FL, for Muffler Shops of St. Petersburg, Inc.
Leo H. Meirose, Jr., Tampa, FL, for Murphy Oil, USA, Inc.
John W. Berry, Jr., Law Offices of S. Sy Sherr, Sarasota, FL, for Need a Diver Marine Service, Inc.
Patricia Lamont, Tampa, FL, for Nick's Restaurant.
Michael L. Chapman, Holland & Knight, Tampa, FL, C. Bryant Boydstun, Jr., Boydstun, Dabroski & Lyle, P.A., St. Petersburg, FL, Pamela E. Savage, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, GA, for Nottingham Co.
Robert B. Alpaugh, Temple Terrace, FL, for Pasco Plumbing.
Peak Oil Company, pro se.
Charles A. Eidson, Tampa, FL, for Peak Oil Co.
Pinellas Septic Service, pro se.
Charles Garon Stephens, Law Office of Charles G. Stephens, George F. Gramling, III, Frank, Schabacker, Gramling, Simmons & Dunlap, Tampa, FL, for Publix Super Markets.
Redi-Strip of Central Florida, Inc., pro se.
Jack Pule, Tampa, FL, for Redi-Strip of Cent. Florida, Inc.
Joseph W. Clark, William A. Gillen, Jr., Shackelford, Farrior, Stallings & Evans, P.A., William Albert Gillen, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, Kathryn B. Fuller, Beveridge & Diamond, New York City, John S. Guttmann, Beveridge & Diamond, P.C., Washington, DC, for Redwing Carriers, Inc.
John B. Grandoff, III, Hill, Ward & Henderson, P.A., Tampa, FL, for Rosedale Manor, Inc., Ruskin Produce Packing Corp., Tampa Maid, Inc.
Scott Irwin Steady, Taub & Williams, P.A., Gregory Paul Holder, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, for Corporation Roto-Rooter.
Seabreeze Restaurant, pro se.
George C. Licata, Tampa, FL, for Seabreeze Restaurant.
Craig Alan Minegar, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Seafood Enterprises, Southeast Oil and Development Corp.
Janine M. Landow-Esser, Holleb & Coff, Chicago, IL, for Swift-Eckrich, Inc.
Michael Neil Brown, Allen, Dell, Frank & Trinkle, Tampa, FL, for Tampa General Hosp., Tampa Soap & Chemical Corp.
*1406 Jack Murray Larkin, Spicola & Larkin, P.A., Tampa, FL, for Tampa Port Authority.
Alice Ruth Huneycutt, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Tampa, FL, for Texaco, Inc.
William Cook Ballard, Fisher & Sauls, P.A., St. Petersburg, FL, Gayle Buttram Carlson, Gayle B. Carlson, P.A., Tampa, FL, for Tim's Waste Oil.
Gary John Takacs, U.S. Attorney's Office, M.D.Fla., Tampa, FL, Russell M. Young, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Washington, DC, for the U.S., U.S. Coast Guard, Dept. of Air Force.
Gary John Takacs, U.S. Attorney's Office, Tampa, FL, for Dept. of Transp., Nat. Transp. Safety Bd.
Ronald H. Noble, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for University of Tampa.
Alice Ruth Huneycutt, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Tampa, FL, Daniel E. Vineyard, Law Office of Daniel E. Vineyard, Houston, TX, for Warren Petroleum Co.
Virginia H. Howard, Dixon & Dixon, Dallas, TX, for Western Sizzlin.
Robert E. Hogfoss, Catherine D. Little, Hunton & Williams, Atlanta, GA, for Allwaste Services.
Andrea E. Zelman [COR LD NTC] Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Tampa, FL, William W. Merrill, III, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, FL, A. Bruce White, Karaganis & White, Ltd., Chicago, IL, for Safety Kleen Corp.
Andrea E. Zelman, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Tampa, FL, William W. Merrill, III, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, FL, Robert Charles Davis, Detroit, MI, for Stroh Brewery Co.

ORDER
KOVACHEVICH, District Judge.
This cause is before the Court on the following:
1. A. Joint Motion by Plaintiff, Hillsborough County, and Defendant, American Cyanamid Company, to clarify the Court's Order (Docket No. 345) with respect to the motion to dismiss, with prejudice, American Cyanamid Company from this action. (Docket No. 357)
B. Motion by Defendant, Hillsborough County School Board, in opposition to the joint motion of Plaintiff, Hillsborough County, and Defendant, American Cyanamid Company, to clarify the Court's Order. (Docket No. 370)
C. Motion by Defendant, Exxon Corporation, in opposition to joint motion to clarify the Court's Order. (Docket No. 374)
D. Motion by Defendants, Bridgestone/Firestone, Inc., Coastal Detroit Diesel/Allison, Inc., Cralle-Hall Motor Company, Florida Power Corporation, GAF Corporation, General Electric Company, IMC Fertilizer, Inc., Laidlaw Waste Systems, Inc., Mobil Oil Corporation, Owens-Illinois, Inc., Proler International Corp., Shell Oil Company, and Tampa Electric Company (hereinafter "the Bridgestone Group"), in opposition to joint motion to clarify the Court's Order. (Docket No. 400)
2. Motion by Defendants, the "Bridgestone Group," to dismiss Plaintiffs' claim for attorney fees under Count I and Count II of the second amended complaint. (Docket No. 401)
3. A. Motion by Defendants, the "Bridgestone Group," to dismiss Count III and Count IV of the second amended complaint. (Docket No. 394)
B. Motion by Defendant, International Petroleum Corporation, to dismiss Count III and Count IV. (Docket No. 404)
C. Motion by Defendant, Proler International Corporation, to dismiss the second amended complaint. (Docket No. 396)
D. Motion by Defendant, Acme Sanitary Services, Inc., to dismiss the second amended complaint. (Docket No. 388)
E. Motion by Defendant, Redwing Carriers, Inc., for judgment on the pleadings. (Docket No. 439)
4. Motion by the Defendant, Roto-Rooter Corporation ("Roto-Rooter") for summary *1407 judgment on Plaintiffs' Claim for contribution toward environmental clean-up costs. (Docket No. 478)

BACKGROUND
This is a case in which the Plaintiffs seek to recover over $8.6 million in costs they incurred responding to environmental contamination at a site known as the Sydney Mine Waste Disposal Site ("the Site"). The Site was operated by Plaintiff, Hillsborough County, during the years 1974-81 for the disposal of liquid wastes including, among other things, septic tank wastes, waste oils, grease trap materials, and other liquid wastes from various industrial and residential entities located in and around Hillsborough County. After Plaintiff, Hillsborough County, discovered that soils and groundwater at the Site were contaminated with hazardous substances, the County engaged in clean-up actions, the costs for which exceeded $6.5 million dollars.
In 1989, Plaintiff, Hillsborough County entered into an Administrative Order By Consent with the United States Environmental Protection Agency ("EPA"), wherein EPA determined that the actions conducted by Hillsborough County were consistent with the National Contingency Plan promulgated pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA").
Also, in 1989, EPA issued an Administrative Order pursuant to Section 106 of CERCLA, 42 U.S.C. Section 9606, wherein EPA identified five parties alleged to be liable under CERCLA for the contamination at the site and sought to require those parties to conduct additional clean-up activity at the Site. Pursuant to the terms of that and a subsequent Administrative Order issued in 1990 to fourteen parties, the remaining Plaintiffs in this case have continued to conduct remedial actions in accordance with CERCLA. To date, American Cyanamid Company and Hillsborough County's Co-Plaintiffs have spent approximately $2.1 million at the Site and continue to incur costs at this Site. With the exception of American Cyanamid Company, the named Plaintiffs are the only parties to this action who have incurred any costs conducting response actions at the Site. A number of the Defendants to this action were named in EPA's Administrative Orders, but are yet to participate in any clean-up activities or to contribute to the costs thereof.
On October 16, 1992, Plaintiff, Hillsborough County, filed the instant action against approximately 170 Defendants, all of whom were parties who arranged for the disposal of hazardous substances and/or transported hazardous substances for disposal at the Site. Since the date on which Plaintiff's complaint was filed, a number of the Defendants originally named have been dismissed pursuant to the terms of settlement agreements. First, as was explained in Plaintiff's Motion to Dismiss, to Realign Parties, and for Leave to File Second Amended Complaint filed September 15, 1993, Plaintiff, Hillsborough County, and American Cyanamid Company, Reynolds Metals Company, Safety-Kleen Corp., The Stroh Brewery Company, Waste Resources of Tampa Bay, Inc. and Winn Dixie Stores, Inc. resolved their claims against each other pursuant to the terms of settlement agreements which provided, inter alia, that Hillsborough County would dismiss these parties and move for the realignment of all but American Cyanamid Company as Co-Plaintiffs. On October 6, 1993, this Court issued an order granting the relief sought, with the exception of the request that American Cyanamid Company be dismissed. On October 14, 1993, Plaintiff, Hillsborough County, and American Cyanamid Company filed a Joint Motion to Clarify the Court's October 6, 1993 order and a Renewed Motion to Dismiss American Cyanamid Company from this action.
1. For the purpose of this Order, the motions listed in 1.A. through 1.D. will be considered together. Plaintiff asserts that to dismiss, with prejudice, American Cyanamid Company (American Cyanamid) from this action will result in the dismissal of cross-claims against American Cyanamid. Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F.Supp. 219 (N.D.Ill.1990). Defendants (Hillsborough County School Board, Exxon Corporation and the Bridgestone Group) argue that American Cyanamid cannot be dismissed until this Court has determined the *1408 appropriate allocation method which applies to a lawsuit between private parties filed under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9607, 9613 (CERCLA).
Private parties (hereafter PRPs) may "go forward and settle" their liability under CERCLA. City and County of Denver v. Adolph Coors Company, 829 F.Supp. 340, 344 (D.Colo.1993). A significant number of courts have found that settling claims with other private parties will be protected from claims for contribution by non-settling PRPs. See e.g. U.S. v. S.C.A. Services of Indiana, Inc., 827 F.Supp. 526 (N.D.Ind.1993); Comercia BankDetroit v. Allen Industries, Inc., 769 F.Supp. 1408 (E.D.Mich.1991); Lyncott v. Chemical Waste Management, Inc., 690 F.Supp. 1409 (E.D.PA 1988); American Cyanamid Co. v. King Industries, Inc., 814 F.Supp. 215 (D.R.I.1993); and U.S. v. Western Processing Co., Inc., 756 F.Supp. 1424 (W.D.Wash.1990). Further, courts have held that the contribution protection accorded to defendants settling their liability under CERCLA discharges related claims made under State law. AKZO Coatings, Inc. v. Aigner Corp., 803 F.Supp. 1380 (N.D.Ind. 1992); Dravo Corp. v. Zuber, 804 F.Supp. 1182 (D.Neb.1992); U.S. v. Pretty Products, Inc., 780 F.Supp. 1488 (S.D.Ohio 1991); and U.S. v. Alexander, 771 F.Supp. 830 (S.D.Tx. 1991).
However, this Court must decide how the non-settling defendants' liability is reduced: the Uniform Contribution Among Tortfeasors Act ("UCATA"). See § 4, 12 U.L.A. 98 (1985) or the Uniform Comparative Fault Act ("UCFA"). See § 6, 12 U.L.A. 37, 50 (Supp.1988).
Under the UCATA, the liability of nonsettling defendants is reduced by the amount specified in the release or covenant. UCATA § 4, 12 U.L.A. 57, 98 (1975). By contrast, the UCFA reduces the non-settler's liability by the amount of the settler's equitable share of the obligation. UCFA § 6 U.L.A. 37, 50 (Supp.1988). Significantly, both the UCATA and the UCFA expressly provide contribution protection to all settlers. City and County of Denver v. Adolph Coors Co., 829 F.Supp. 340, 344 (D.Colo.1993); U.S. v. Western Processing Co., Inc., 756 F.Supp. 1424 (W.D.Wash.1990).
Federal courts, by and large, have favored application of the UCFA, as opposed to the UCATA, to private party settlements in CERCLA litigation. Various courts have analyzed the strengths and weaknesses of the two methods of allocation.
There are four significant advantages of the UCFA over the UCATA:
(1) [UCFA] provides for equitable apportionment of responsibility, and where there is a partial settlement, the judgement is reduced by the proportionate fault of the settling defendant who is then discharged;
(2) complex partial settlements involving multiple parties, claims or theories are more easily resolved (without the imprecision of allocation prior to trial by the court under the pro tanto [UCATA] theory);
(3) the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement;
(4) total settlement is encouraged after partial settlement as a culpable nonsettlor cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this serves also to deter wrongful conduct.

United States v. Western Processing Co., 756 F.Supp. 1424, 1430 (W.D.Wash.1990).
The court, in Western Processing, also contemplated the disadvantages of the UCFA approach:
(1) recovery of the exact amount of the total damages set by the trier of fact is entirely fortuitous when there has been partial settlement, as the nonsettlors pay only their fair share regardless of the amount of settlements paid; this can lead to
(2) impairment of a claimant's willingness to settle because of the uncertainty of the amount to be credited for the settlements;
(3) at trial, a plaintiff must not only advocate his freedom from fault, but also convince the trier of fact of the settlor[s] minimal fault. In complex cases the plaintiff *1409 may not have access to information that the settling defendant would have had, and a distortion could result from the settlor not defending his own interest.

Id. at 1431.
Despite the apparent disadvantages of the UCFA approach, a majority of courts have determined that these drawbacks are far outweighed by the advantages and concluded that the UCFA approach is superior. On that ground, those courts have employed the UCFA in settlement agreements of CERCLA private party contribution actions. See e.g. American Cyanamid Co. v. King Industries, Inc., 814 F.Supp. 215, 219 (D.R.I.1993); Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F.Supp. 219, 223 (N.D.Ill.1990); Comerica BankDetroit v. Allen Indus., Inc., 769 F.Supp. 1408, 1414 (E.D.Mich.1991); Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651 (N.D.Ill.1988), aff'd on other grounds, 861 F.2d 155 (7th Cir. 1988); Lyncott Corp. v. Chemical Waste Management, Inc., 690 F.Supp. 1409, 1418-19 (E.D.Pa.1988).
The analysis of two commentators with respect to the application of the UCFA approach in private party CERCLA settlements further bolsters the argument for the UCFA method:
[I]n government settlement actions courts will generally interpret the language of section 113(f)(2) as requiring application of the UCATA. However, courts deciding contribution suits between private PRPs have almost unanimously adopted the UCFA. This different result is attributable to the contrasting language of section 113(f)(1) and section 113(f)(2). Section 113(f)(2) states that when someone settles with the United States or a state, the other nonsettling parties' liability will be reduced by the amount of the settlement, whereas section 113(f)(1) says that "in resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." Section 113(f)(1)'s specific directive to consider equitable factors and section 113(f)(2)'s omission of the same language appear to dictate application of UCFA in actions between PRPs and the UCATA where the EPA or other state brings the action.
United States v. SCA Services of Indiana, Inc., 827 F.Supp. 526, 534 (N.D.Ind.1993) (citing Lynette Boomgardon and Charles Breer, Surveying the Superfund Settlement Dilemma, 27 Land and Water L.Rev. at 111-112). Although this case involves Hillsborough County, a political subdivision of the State of Florida, the present matter is undisputedly a controversy between two private parties.
If the UCATA method is employed, hearings would be necessary to review settlements. United States v. Conservation Chemical Company, 628 F.Supp. 391, 401-402 (W.D.Mo.1985); see also, Lyncott Corporation v. Chemical Waste Management, Inc., 690 F.Supp. 1409, 1418 (E.D.Pa.1988) (where court would not dismiss settling defendant until its equitable share was determined at trial). Such proceedings are generally long, complex evidentiary hearings which are considered a deterrent to settlement and inconsistent with CERCLA's policy of encouraging settlement. Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 834 F.Supp. 342, 349 (D.Kan.1993); Comerica Bank-Detroit, 769 F.Supp. at 1414; Allied Corp., 771 F.Supp. at 223. By contrast, the UCFA method eliminates the need for courts to conduct a fairness hearing on the terms of each settlement:
The comparative fault rule protects nonsettling defendants by assuring them that they will not be liable for more than their equitable share as finally determined at the close of litigation. Thus, the need for a fairness hearing is negligible, especially relative to its potential harm to its settlement process.

Allied Corp., 771 F.Supp. at 223.
Several courts, however, have applied the UCATA in private party settlements. See e.g., City and County of Denver v. Adolph Coors Co., 829 F.Supp. 340, 345-46 (D.Colo. 1993); Allied Corp. v. Frola, 730 F.Supp. 626, 638-39 (D.N.J.1990). In Adolph Coors, the court held that UCFA is inconsistent with the intent of Congress and the purposes *1410 of CERCLA. City and County of Denver v. Adolph Coors, 829 F.Supp. at 345.
This Court respectfully disagrees with the reasoning applied by the court in Adolph Coors. More specifically, the intent of Congress and the purposes of CERCLA are inextricably intertwined: To achieve "the prompt clean-up of hazardous waste sites," and fairly allocate "the costs of the clean-up to those responsible for the contamination." Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 834 F.Supp. 342, 346 (D.Kan. 1993). UCFA effectively embraces both prompt clean-up and fair allocation.
This Court, having reviewed the various advantages and disadvantages of the UCFA and UCATA, adopts the well-reasoned analysis of the vast majority of courts which have employed the UCFA approach in settlements between private parties in CERCLA litigation. On that ground, no fairness hearing is required as a condition precedent to the settlement between Hillsborough County and American Cyanamid. Accordingly, it is ordered that American Cyanamid is dismissed with prejudice from this action thereby resulting in the dismissal of all cross-claims against American Cyanamid.
2. Defendants, the "Bridgestone Group," move to dismiss the claim for attorney's fees, under Count I and Count II of the second amended complaint, on the ground that CERCLA does not explicitly authorize the award of attorneys' fees. (Count I is based on CERCLA Section 107, U.S.C. § 9607; Count II is based on CERCLA Section 113, 42 U.S.C. § 9613.)
The general rule is that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). "(A)bsent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation." Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). "Thus in order to uphold an award of attorneys' fees, we look to the language of CERCLA. We must find more than `generalized commands;' there must be a clear expression of Congress' intent." General Electric Company v. Litton Industrial Automation, 920 F.2d 1415 (8th Cir.1990).
Statute 42 U.S.C. § 9607(a)(4)(B), provides that private parties may recover "necessary costs of response ... consistent with the national contingency plan." Section 9601(25) of that statute defines "response" as "remove, removed, remedy and remedial action; all such terms (including the terms `removal' and `remedial action') include enforcement activities related thereto." A private party cost recovery action is an enforcement activity within the meaning of the statute. See Cadillac Fairview/California, Inc. v. Dow Chemical Co., 840 F.2d 691, 694 (9th Cir.1988); Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 892 (9th Cir.1986). The Eighth Circuit analyzed the language of CERCLA and noted that "[a]ttorney fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the `necessary costs' that § 9607(a)(4)(B) allows private parties to recover." General Electric Company v. Litton Industrial Automation, 920 F.2d at 1422. The Eighth Circuit, in Litton, concluded that "CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorneys fees and expenses." Id.
The Litton court based its conclusion on the consistency between the statutory language and the two main purposes of CERCLA: "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party." Id.
The Sixth Circuit likewise concluded that private parties are entitled to recover attorney fees in a cost recovery action brought under CERCLA. See Donahey v. Bogle, 987 F.2d 1250 (6th Cir.1993). The Donahey court, as did the Litton court, grounded its conclusion by analyzing the Congressional intent of CERCLA § 107:
By providing parties with a federal cause of action for the recovery of necessary expenses in the cleanup of hazardous waste, Congress intended Section 107 as a powerful incentive for these parties to expend *1411 their own funds initially without waiting for the responsible persons to take action. [Citations omitted]. The court can conceive of no surer method to defeat this purpose than to require private parties to shoulder the financial burden of the very litigation that is necessary to recover these costs.
Id. at 1256 (quoting from Bolin v. Cessna Aircraft Co., 759 F.Supp. 692 (D.Kan.1991)).
Although the Court recognizes that the Ninth and Tenth Circuits have ruled to the contrary, this Court adopts the reasoned analysis and conclusion advanced in Litton and Donahey.[1] Accordingly, the Court denies the Defendants' motion to dismiss the claim for attorney fees under Count I and Count II of the Second Amended Complaint.
3. For the purposes of this Order, the motions listed in 2.A. through 2.E. will be considered together. Defendants move to dismiss the Second Amended Complaint for failure to state a cause of action, arguing that the Second Amended Complaint is legally insufficient as a matter of law. Defendants argue that Plaintiffs have failed to include specific factual allegations concerning the liability of each individual Defendant.
Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Additionally, when considering a motion to dismiss, a court must consider the plaintiff's allegations as true. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).
More specifically, CERCLA litigation does not require a higher level of specificity in pleadings. The Supreme Court has recently considered the propriety of a heightened pleading standard developed through case law. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, ___ U.S. ___, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The Court held that a heightened pleading standard is "impossible to square" with "the liberal system of `notice pleading' set up by the Federal Rules." Id. at ___, 113 S.Ct. at 1160. The Leatherman Court further noted that Federal Rule 9(b) specifically provided two exceptions to notice pleading for averments of fraud or mistake and, therefore, such express exceptions are the only exceptions to the general rule as articulated in Rule 8(c), Fed.R.Civ.P. Id. at ___, 113 S.Ct. at 1163. Any other exception "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." Id. More recently, a federal district court adopted the Leatherman analysis and held that a heightened pleading standard does not apply to CERCLA litigation. See Warwick Administrative Group v. Avon Products, Inc., 820 F.Supp. 116, 120 (S.D.N.Y.1993). This Court also adopts the Leatherman analysis. Accordingly, the Court denies the Defendants' motions to dismiss the claims of Plaintiffs for failing to state a cause of action.
In addition, various Defendants move to dismiss Count III and Count IV of the Second Amended complaint on the ground that Chapters 376 and 403, Fla.Stat. (1993) do not create an independent, private right of action. Count III and Count IV of Plaintiffs' Second Amended complaint pertain specifically to damages, pursuant to Chapter 376, Florida Statutes, and contribution, pursuant *1412 to Chapters 326, 403 and 376, Florida Statutes.
Although CERCLA does not preclude all state law causes of action where plaintiff seeks contribution for response costs incurred as a result of an EPA ordered waste site clean up, such state contribution claims are only available against parties not liable for contribution under CERCLA. Edward Hines Lumber Co. v. Vulcan Materials Co., 685 F.Supp. 651 (N.D.Ill.1988), aff'd on other grounds, 861 F.2d 155 (7th Cir.1988). In this case, the Defendants are, at least, potentially liable for contribution under CERCLA for response costs incurred pursuant to the EPA order. To that extent, any questions bearing on the application of Chapters 376 and 403, Fla.Stat. (1993) are not ripe.
Additionally, Defendant, Proler International Corporation ("Proler") moves to dismiss the Second Amended Complaint on grounds separate and distinct from the issues raised by the other defendants. (See Motion 3.C. of this Order). Defendant, Proler, asserts that Plaintiffs incorrectly named Proler in this matter, rather than its subsidiary MRI Corporation and, therefore, the complaint should be dismissed as against Proler. Plaintiffs assert that material obtained through a Freedom of Information Act Request, reveal that the same individuals who responded to correspondence sent by EPA to MRI, also responded to correspondence sent by EPA to Proler. Plaintiffs further assert that it was Proler who negotiated with EPA on behalf of MRI in pursuit of a de minimis settlement agreement. This Court grants Plaintiffs an opportunity to determine, through additional discovery, the relationship between MRI and Proler. If necessary, this Court will grant Plaintiffs' leave to amend its complaint so as to name MRI rather than Proler. Accordingly, motion by Defendant, Proler, to dismiss the Second Amended Complaint is denied.
Finally, with respect to Motion No. 3.D. Defendant, Acme Sanitary Services, Inc., ("Acme"), moves to dismiss the Second Amended Complaint, on grounds separate and distinct from the other defendants. Acme asserts that Plaintiff's action is barred by the Statute of Limitations. However, pursuant to 42 U.S.C. Section 9613(g)(2), the limitations period does not begin to run as of the time of the last possible date of any action by any defendant; rather, it begins to run when all contamination is removed. See, U.S. v. Rohm and Haas Co., 790 F.Supp. 1255, 1264 (E.D.Pa.1992). Therefore, the motion to dismiss by Defendant, Acme, is denied.
4. Pursuant to Federal Rules of Civil Procedure, Rule 56, Roto-Rooter moves for summary judgement on the grounds that Roto-Rooter conducts business in Tampa area solely as a franchisor-licensor of an independent contractor, Dolfran, Inc. ("Dolfran"), which uses the Roto-Rooter service system and service mark to perform sewer, drain and pipe cleaning services. Pursuant to this franchise relationship, Roto-Rooter argues, Roto-Rooter did not assume control and did not have the ability or obligation to control any of Dolfran's activities or decisions regarding its waste disposal activities. On that basis, Roto-Rooter asserts that it is not, as a matter of law, a liable party under CERCLA.
A court should grant summary judgement only when the moving party has demonstrated the absence of any material fact when all the evidence is viewed in the light most favorable to the non-moving party. Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir. 1983). All doubt as to existence of a material fact are resolved against the moving party. Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994 (5th Cir.1979).[2]
In U.S. v. Aceto Agricultural Chemicals Corp., 872 F.2d 1373 (8th Cir.1989), the court rejected the motion that only individuals who owned or possessed hazardous substances could be liable in under CERCLA and imposed liability on those who had the authority to control the disposal, even without ownership or possession. Id. at 1382. (citing U.S. v. Northeastern Pharmaceutical and *1413 Chemical Co., 810 F.2d 726, 733-44 (8th Cir. 1986), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (emphasis in original). The franchise agreement between Roto-Rooter and Dolfran is critical to determining the extent of the control the franchisor retained over its franchisee.
Based on the franchise agreement, Dolfran was required to actively advertise the Roto-Rooter system and the methods, techniques and services employed by Roto-Rooter. In addition, the agreement included language referring to the use of service marks "as directed by" Roto-Rooter, and the performance of services "as permitted by Roto-Rooter." The agreements further stipulated that Dolfran use Roto-Rooter sewer, pipe and drain cleaning services, as well as machines and accessories manufactured by the company or their equivalent. The agreements also provided that Roto-Rooter would retain title to all that equipment which its franchisees were required to use. Roto-Rooter required the Dolfran service man be in clothes so as to be easily identifiable "as bona-fide Roto-Rooter service men," and that service vehicles be "readily identifiable as Roto-Rooter vehicles." Lastly, Roto-Rooter agreed to provide to its franchisees "advice and instructions to licensees with respect to proper use of the Roto-Rooter system and service marks and soliciting and performing sewer, drain and pipe cleaning services."
Although the foregoing does not unequivocally establish that Roto-Rooter "had the authority to control the disposal" by Dolfran, as articulated by the Aceto court, it nonetheless, at the very least, gives rise to a genuine and material question of fact with respect to the control Roto-Rooter exercised over Dolfran. Therefore, the motion for summary judgment is denied. Accordingly, it is
ORDERED that the Joint Motion (Docket No. 357) by Plaintiff, Hillsborough County, and Defendant, American Cyanamid Company, to dismiss, with prejudice, American Cyanamid Company from this action be granted and all responsive motions (Docket Nos. 370, 374 and 400) be denied; it is further
ORDERED that Defendant's motion to dismiss (Docket No. 401) Count I and Count II of the Second Amended Complaint be denied; it is further
ORDERED that Defendant's motions to dismiss and for judgment on the pleadings (Docket Nos. 394, 404, 396, 388 and 439) Count III and Count IV of the Second Amended Complaint be denied; it is further
ORDERED that Roto-Rooter's Motion for Summary Judgment be denied, and finally, it is
ORDERED that the Plaintiffs' motion for case management order (Docket No. 383) and to stay (Docket No. 409) be denied as moot based on the Court's Rule 16, Fed. R.Cir.P. preliminary pre-trial conference.
DONE AND ORDERED.
NOTES
[1] See Key Tronic Corporation v. United States of America, 984 F.2d 1025 (9th Cir.1993) and Stanton Road Associates v. Lohrey Enterprises, 984 F.2d 1015 (9th Cir.1993) (holding that CERCLA did not authorize award of attorneys' fees to private litigants as part of response costs incurred in cleaning up property contaminated by hazardous substance); FMC Corporation v. Aero Industries, 998 F.2d 842 (10th Cir.1993) (holding that a private party may not recover attorney fees arising from the litigation of private recovery action but may recover nonlitigation attorneys fees generated in designing and negotiating the removal action and in preparing and carrying out the work plan approved by the EPA).
[2] Decisions of the former Fifth Circuit are binding on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981).