**LONG BEACH UNIFIED SCHOOL DISTRICT, Plaintiff–Appellant,**

v.

**DOROTHY B. GODWIN CALIFORNIA LIVING TRUST, et al., Defendants,**

and

**Mobil Oil Corporation, Powerine Oil Co., Defendants–Appellees.**

No. 92–56562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May. 4, 1994.

Decided July 14, 1994.

Mark C. Allen, III, Wise, Wiezorek, Timmons & Wise, Long Beach, CA, for plaintiff-appellant.

Gary J. Smith and Theresa Cho, Beveridge & Diamond, San Francisco, CA, for Mobil Oil Corp.

John F. Cermak, Jr., Rodi, Pollock, Pettker, Galbraith & Phillips, Los Angeles, CA, for Powerine Oil Co.

Before: KOZINSKI and TROTT, Circuit Judges, and WILLIAMS,* District Judge.

KOZINSKI, Circuit Judge.

We must decide whether the holder of an easement burdening land which contains a hazardous waste facility is, by virtue of that interest alone, liable for cleanup costs as an "owner" or "operator" under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*

**I**

Appellant, Long Beach Unified School District ("the district"), bought land from the

---

* The Honorable Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation.

Dorothy B. Godwin California Living Trust and the Grover Godwin California Trust ("the trusts"). Before the sale, this land was leased to the Schafer Bros. Transfer and Piano Moving Company ("Schafer Bros."), which maintained a waste pit on it.

The district knew about this pit before closing the deal because the trusts' site assessment had revealed the contamination, ER 4, and had estimated that decontamination would cost $249,000. *Id.* As a condition of the sale, the district required the trusts to put $250,000 in escrow for cleanup. ER 5.

This amount turned out to be not nearly enough. Though it paid for an expert evaluation of the site, nothing was left to even start a cleanup. And so, apparently through its own short-sightedness, the school district was left holding a rather contaminated bag. It responded, as people with toxic waste-ridden property are wont to, by bringing a CERCLA action in federal district court.[1]

Happily, the obvious CERCLA defendants—the seller and the tenant who polluted the land—both settled, SER 1–2, agreeing to pay a substantial share of the anticipated cleanup costs. *See* SER 8–10.[2] The case continues against the two remaining defendants, Mobil Oil Corp. and Powerine Oil Co. (collectively "M & P"). Their tie here is not that they helped pollute the property—plaintiff never even alleges this. Rather, each held an easement to run a pipeline across the property and the district says this makes them automatically "owners" or "operators" under 42 U.S.C. § 9607. ER 7.

M & P filed 12(b)(6) motions to dismiss for failure to state a claim, ER 24, 28, which the district court granted. ER 62. We review such decisions *de novo,* accepting the plaintiff's allegations as true and construing them in the light most favorable to the district. *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989).

## II

CERCLA liability has been described as "a black hole that indiscriminately devours all who come near it." Jerry L. Anderson, *The Hazardous Waste Land,* 13 Va. Envtl.L.J. 1, 6–7 (1993). For example, CERCLA has been read as a strict liability statute. *See, e.g., General Elec. Co. v. Litton Indus. Automation Sys., Inc.,* 920 F.2d 1415, 1418 (8th Cir.1990); *United States v. Monsanto Co.,* 858 F.2d 160, 167 & n. 11 (4th Cir.1988); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985); *Violet v. Picillo,* 648 F.Supp. 1283, 1290 (D.R.I.1986); *United States v. Conservation Chem. Co.,* 619 F.Supp. 162, 204 (W.D.Mo.1985). It has been applied retroactively, *see, e.g., United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 733, 737 (8th Cir. 1986); *United States v. Shell Oil Co.,* 605 F.Supp. 1064, 1073 (D.Colo.1985); *Ohio ex rel. Brown v. Georgeoff,* 562 F.Supp. 1300, 1314 (N.D.Ohio 1983), a policy that has attracted criticism. *See, e.g.,* Anderson, 13 Va. Envtl.L.J. at 19 ("[M]uch of the roulette wheel nature of CERCLA's liability results from its retroactivity"); *see also Developments in the Law—Toxic Waste Litigation,* 99 Harv.L.Rev. 1458, 1540–42 (1986) (though retroactive application is the best approach to spreading cleanup costs, Congress should recognize the limits of what retroactivity can accomplish). And it has corroded the corporate veil, *see, e.g., United States v. Carolina Transformer Co.,* 739 F.Supp. 1030, 1036–38 (E.D.N.C.1989), a policy that also has drawn criticism. *See, e.g.,* Anderson, 13 Va. Envtl.L.J. at 39; Lynda J. Oswald, *Strict Liability of Individuals Under CERCLA: A Normative Analysis,* 20 B.C.Envtl.Aff.L.Rev. 579 (1993). *But see Joslyn Mfg. Co. v. T.L. James & Co.,* 893 F.2d 80 (5th Cir.1990) (refusing to pierce corporate veil to reach parent company).

Nevertheless, CERCLA liability is not unlimited. Specifically, the statute imposes no liability under 42 U.S.C. § 9607(a) unless four elements are satisfied:

(1) the waste disposal site is a "facility" ...; (2) a "release" or "threatened release" of any "hazardous substance" from

---

**1.** The complaint also stated claims under California nuisance law, but the district is not appealing dismissal of those claims.

**2.** The school district will still have to pay at least $150,000, SER 3, maybe more. *Id.* at 7.

the facility has occurred ...; and (3) such "release" or "threatened release" has caused the plaintiff to incur response costs.... In addition, [4] the defendant must fall within one of four classes of persons subject to CERCLA's liability provisions.

*Ascon Properties,* 866 F.2d at 1152 (citations omitted).

Defendants do not contest that the waste pit is a facility, that it releases hazardous substances or that plaintiff must incur response costs. This dispute turns on the final element—whether defendants fall within one of four classes subject to liability under the statute: (1) present owners and operators of a hazardous waste facility; (2) past owners or operators of such a facility; (3) arrangers of hazardous waste disposal; and (4) transporters of such waste. 42 U.S.C. §§ 9607(a)(1)–(4).

It's undisputed that M & P were never involved in dealing with or transporting hazardous substances, so sections (a)(3) and (a)(4) clearly don't apply. If defendants are covered, it must be under section (a)(1) or (a)(2). As a result, the question is whether M & P, as holders of an easement burdening the polluted property, qualify as "owners" or "operators" of the hazardous waste facility.

■ Obviously "owner" and "operator" are distinct concepts, else Congress wouldn't have used two words. Like other courts, we read these categories in the disjunctive. *See, e.g., United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1554 n. 3 (11th Cir.1990); *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1573 (5th Cir.1988); *Guidice v. BFG Electroplating & Mfg. Co.,* 732 F.Supp. 556, 561 (W.D.Pa.1989); *Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1280–81 (D.Del. 1987), *aff'd,* 851 F.2d 643 (3d Cir.1988); *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573, 578 (D.Md.1986). In

other words, a party may be liable either as an owner or as an operator (or both, of course). We therefore consider whether M & P fall into either of these categories.

■ **A.** The holder of an easement can clearly be an operator under CERCLA. For example, CERCLA expressly includes pipelines in its definition of "facility." 42 U.S.C. § 9601(9). As a result, when a party uses the easement to operate a pipeline that releases hazardous materials,[3] it is liable as an operator provided the other statutory elements are satisfied.[4] In this respect, an easement holder is no different from anyone else.

But the district doesn't allege that M & P's pipelines are leaking toxic waste, nor is there anything on the record to suggest this is the case. Rather, the district merely points to the fact that defendants' pipelines crossed Schafer's waste pit and claims this put defendants "in a position to prevent" the contamination. ER 7.

This allegation is not sufficient to render the defendants operators under the statute. To be an operator of a hazardous waste facility, a party must do more than stand by and fail to prevent the contamination. It must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management. *See Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 157–58 (7th Cir.1988) (supplier is not operator because he cannot control work at plant, choose employees, direct their activities or set prices, while its limited veto, in and of itself, is not enough to make it an operator); *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1052 (2d Cir. 1985) (defendant "is in charge of the operation of the facility in question, and as such is an 'operator' within the meaning of CERCLA"); *cf. In re Bergsoe Metal Corp.,* 910 F.2d 668, 672 (9th Cir.1990) (secured creditor not liable under 9601(20)(A) unless he en-

---

**3.** We do not reach the closer question of an easement holder's liability when he leases his right to use land to someone else, who then operates such a pipeline. As discussed below, operator liability generally turns on the defendant's control over the facility, *see* p. 7758 *infra.* The easement holder's liability, therefore, should hinge on his degree of participation in operating the facility.

**4.** In such a situation, the easement holder might also be liable as an arranger or transporter of hazardous materials under sections 9607(a)(3) & (a)(4).

gages in "some actual management"); 40 C.F.R. § 300.1100 (EPA rule indicating that secured lenders are only liable if they actually participate in facility's management). Exercising the right to pass a pipeline over someone's property is as far removed from active management of the property as one could get, short of having no connection to the property at all. This is much less than the active control we require before someone will be held liable as an "operator" under CERCLA.

**B.** In the alternative, the district argues that, as holders of easements across the facility, M & P are the property's "owners." We suspect the district would be less eager to call someone else an owner of its property if there were gold there, rather than a toxic waste pit. It's human nature, we suppose, to be more generous with one's misfortunes.

CERCLA gives no definition of "owner" and therefore does not tell us whether parties owning an interest that is much less than a fee—such as an easement—are to be deemed owners for purposes of CERCLA liability. Rather, 42 U.S.C. § 9601(20)(A) defines "owner or operator" as "any person owning or operating" a toxic waste facility, which is a bit like defining "green" as "green."

But all is not lost, as we have a maxim of construction to fit every occasion. Circularity too provides a clue to the legislature's purpose, for it "strongly implies ... that the statutory terms have their ordinary meanings rather than unusual or technical meanings." *Edward Hines Lumber*, 861 F.2d at 156; *cf. Key Tronic Corp. v. United States*, —— U.S. ——, ——, 114 S.Ct. 1960, 1966–68, 128 L.Ed.2d 797 (1994) (construing statutory term "enforcement activities" according to its plain meaning); *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 9–11, 109 S.Ct. 2273, 2279–80, 105 L.Ed.2d 1 (1989) (relying on a "cascade of plain language"); *Cadillac Fairview/California v. Dow Chem. Co.*, 840 F.2d 691, 697 (9th Cir.1988) (resolving issue based on plain language of CERCLA). In other words, we read the statute as incorporating the common law definitions of its terms. *Edward Hines Lumber*, 861 F.2d at 157.

The common law does not regard an easement holder as the owner of the property burdened by it. Rather, an easement is merely the right to use someone's land for a specified purpose, such as a driveway, a drainage ditch or even a pipeline. As the California Supreme Court has held, "[i]t is axiomatic ... that an easement conveys rights in or over the land *of another*. 'An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property.'" *Camp Meeker Water Sys., Inc. v. Public Utils. Comm'n*, 51 Cal.3d 845, 865, 274 Cal.Rptr. 678, 799 P.2d 758 (1990) (quoting *Wright v. Best*, 19 Cal.2d 368, 381, 121 P.2d 702 (1942)); *see also* 4 B. Witkin, *Summary of California Law*, § 434 (9th ed.) (defining easement as an *"interest in the land of another*, which entitles the easement holder to a *limited use or enjoyment* of the other's land").

Common law courts have consistently distinguished between ownership of an easement and ownership of the burdened land. *See, e.g., City of Hayward v. Mohr*, 160 Cal.App.2d 427, 432, 325 P.2d 209 (1958) (though easement is interest in land, it is only "a limited use or enjoyment of the land in which the interest exists, ... it is not itself either land or an estate in land"); *Robinson v. Cuneo*, 137 Cal.App.2d 573, 577, 290 P.2d 656 (1955) (refusing to construe easement to prohibit owner of land from using area of easement because, unlike owner, easement holder "owns no part of the land itself and has no right to exclude the owner from the use of any of the land, except insofar as a use interferes with his easement rights"); *Henry Bickel Co. v. Texas Gas Transmission Corp.*, 336 S.W.2d 345, 347–48 (Ky.1960) (easement holder is not an "owner" of land); *Weeks v. Texas Illinois Natural Gas Pipeline Co.*, 276 S.W.2d 321, 323 (Tex.1955) (because easement holder did not have possessory interest or any right in property beyond limits of right to lay and maintain pipeline, he could not be held liable for waste). Given this well established distinction, we see no basis for holding that easement holders are owners for

purposes of CERCLA liability.[5]

Sound public policy supports this reading of the statute. Vast numbers of easements encumber land title records throughout the United States, establishing such diverse rights as the running of utility poles, cables and railroad track, irrigation, overflight, passage on foot, even use of a swimming pool, *see generally* Olin L. Browder et al., *Basic Property Law* 514–95 (5th ed. 1989)—not to mention "scenic" easements, which preserve the "scenic and historical attractiveness" of the dominant estate. *See id.* at 536. Subjecting holders of these interests to CERCLA liability would not only disserve the statute's purposes—which is to make polluters pay for the damage they cause, *see, e.g., Union Gas,* 491 U.S. at 7, 109 S.Ct. at 2277–78 (stating that CERCLA "imposes the costs of the cleanup on those responsible for the contamination"); *United States v. Reilly Tar & Chem. Corp.,* 546 F.Supp. 1100, 1112 (D.Minn.1982) ("Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created")—but it would vastly and unjustifiably increase the potential number of CERCLA defendants. Among these would surely be legitimate, non-polluting actors such as telephone and electric companies which, in running pipelines and cables, have no greater responsibility for the nation's toxic waste problem than the public at large. Nor is it clear what these entities have to offer beyond a deep pocket[6]—no doubt a wonderful thing to find in a defendant, but not a sufficient basis for the imposition of liability. Without a much clearer

expression from Congress that the term owner is meant to encompass holders of easements, we see no basis for construing the statute as plaintiff suggests.

■ Nor is the district helped by the clause in section 9601(20)(A) that excludes from the definition of "owner or operator" a "person, who, without participating in the management of a vessel or facility, holds indicia of ownership to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). The district relies on a broad negative inference from this phrase—that anyone else "hold[ing] indicia of ownership" (which, the district claims, includes an easement) is covered as an "owner or operator," even if he doesn't participate in management. Appellant's Br. at 7–8.

The clause the district relies on was tailored to deal with a specific problem—the scope of a non-managing lender's CERCLA liability. We doubt that Congress, in resolving this narrow issue—one which, incidentally, has prompted disagreement among the courts of appeals, *compare United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1557–58 (11th Cir.1990) (actual management unnecessary for secured creditor liability) *with In re Bergsoe Metal Corp.,* 910 F.2d 668 (9th Cir. 1990) ("some actual management" is necessary for a secured creditor to be liable)—also intended to impose liability on everyone else who has any interest at all in land containing a toxic waste facility. The EPA drew no such inference in its rule construing this clause, *see* 40 C.F.R. § 300.1100 (EPA rule indicating that secured lenders are liable only if they engage in actual participation in

---

5. While we deem a defendant's status as an owner under common law as necessary to being an owner under CERCLA, we do not consider whether it is sufficient.

6. One commentator, in advocating ownership liability for easement holders, suggests these entities could provide useful monitoring of waste disposal. *See* Jill D. Neiman, Note, *Easement Holder Liability Under CERCLA: The Right Way to Deal with Rights–of–Way,* 89 Mich.L.Rev. 1233 (1991). But it's not only unfair to impose this burden on these entities, and inefficient to pay for cleanup by increasing the price of activities, such as phone service, that do not themselves generate toxic waste. It's also not clear this monitoring would add much to what subsequent

purchasers are already required to do. *See* Melissa A. McGonigal, Comment, *Extended Liability Under CERCLA: Easement Holders and the Scope of Control,* 87 Nw.U.L.Rev. 992, 1022 (1993) ("easement holders would not make efficient or competent monitors"). After all, detecting toxic waste can be a complex and costly matter, and the experts hired by a prospective buyer are presumably more likely to find such waste than, say, a telephone repairman. Finally, because easement holders exercise no control over the owner of the servient estate beyond preventing him from interfering with the easement, it's not clear how easement holders could stop the pollution if they did discover it. *Id.* at 1025–26.

facility's management), nor do we see a basis for doing so.

\* \* \*

Having an easement does not make one an "owner" for purposes of CERCLA liability. Moreover, though an easement holder can be an "operator," M & P do not qualify as such on the facts alleged by the district. Consequently, defendants' motion to dismiss was properly granted.

**AFFIRMED.**