859 F.Supp. 1125 (1994)
GRAND TRUNK WESTERN RAILROAD COMPANY, Plaintiff,
v.
ACME BELT RECOATING, INC., et al., Defendants.
UNITED STATES of America, Plaintiff,
v.
GENERAL FOODS CORPORATION, et al., Defendants.
Nos. 4:87-CV-364, 1:90-CV-397.
United States District Court, W.D. Michigan, Southern Division.
August 12, 1994.
*1126 Michael L. Shiparski, W. Francesca Ferguson, Asst. U.S. Attys., Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, Michael J. McNulty, Thomas A. Mariani, Jr., Richard B. Stewart, Susan L. Schneider, Anna L. Wolgast, Environment & Natural Resources Div., Environmental Enforcement Section, Jon M. Lipshultz, Environmental Defense Section, Land & Natural Resources Div., Leslie E. Lehnert, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, Roger Grimes, Asst. Regional Atty., U.S. E.P.A., Region V, Chicago, IL, for the U.S.
Larry C. Willey, Grand Rapids, MI, Timothy A. Vanderver, Jr., John H. Martin, David J. Farber, Patton, Boggs & Blow, Washington, DC, for General Foods Corp.
Larry C. Willey, Grand Rapids, MI, David J. Hayes, Peter L. Winik, Latham & Watkins, Washington, DC, for Lasco Industries, Inc.
Robert P. Hamilton, Sullivan, Hamilton, Schulz, Allen & Letzring, Battle Creek, MI, John R. LaParl, Jr., John R. LaParl, Sr., Smith, LaParl & Mequio, Portage, MI, for Cello-Foil Products, Inc.
Larry C. Willey, Grand Rapids, MI, Mary Beth Cyze, Susan M. Franzetti, Gardner, Carton & Douglas, Chicago, IL, for Acme Printing Ink Co.
Larry C. Willey, Grand Rapids, MI, Jeffrey O. Cerar, Cynthia G. Irmer, Squires, Sanders & Dempsey, Washington, DC, Timothy C. Russell, Stuart E. Hunt, Sonnenschein, Nath & Rosenthal, Washington, DC, for Hoover Universal, Inc.
Larry C. Willey, Grand Rapids, MI, Michael L. McCluggage, Thomas W. Daggett, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Clark Equipment Co.
Paul T. Sorensen, Eugene E. Smary, Warner, Norcross & Judd, Grand Rapids, MI, for Kellogg Co.
R. Craig Hupp, Bodman, Longley & Dahling, Detroit, MI, for Grand Trunk Western R. Co., amicus.
Charles R. Bappert, Biringer, Hutchinson & Van Doren, P.C., Coldwater, MI, for Acme Belt Recoating.
Daniel P. King, Michael J. Nolan, Cortney E. Kelly, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Acheson Industries, Inc., Akemi Plastics, Inc., Armstrong Intern., Inc., Crotty Corp.
Ann F. Goodman, Miller, Canfield, Paddock & Stone, Lansing, MI, Gregory J. DeGulis, Janik & Bell, Cleveland, OH, for Acorn Bldg. Components, Inc.
John C. Fish, James, Dark & Brill, Kalamazoo, MI, Steven C. Kohl, Howard & Howard, P.C., Bloomfield Hills, MI, Richard D. McCormick, Bott & Spencer, P.C., Muskegon, MI, for Bennett Mfg. Co.
Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Bronson Specialties, Inc., Motor Wheel Corp.
Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, for Douglas Component Corp., Eaton Corp., Sinclair and Valentine Co., Inc., Stauffer Chemical Co.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Barry L. Malter, Jerome C. Muys, Jr., Jeffrey M. Karp, Paula E. Shoyer, Swidler & Berlin, Washington, DC, Steven L. Skahn, Grand Rapids, MI, for Emhart Industries, Inc., Bostick Chemical Div.
Jack D. Shumate, Darlene M. Domanik, Diane B. Carley, Butzel Long, Detroit, MI, Jean McCreary, Robert E. Bernius, Nixon, Hargrave, Devons & Doyle, Rochester, NY, for Federated Publication, Inc.
Margaret A. Coughlin, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Robert E. Costello, Ford Motor Co., Dearborn, MI, Richard A. Glaser, Dustin P. Ordway, *1127 Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Ford Motor Co.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Robert S. Hartford, Jr., Nadler, Nadler & Burdman Co., Youngstown, OH, Steven L. Skahn, Grand Rapids, MI, for G.F. Corp.
Nancy M. Kollar, Winston & Strawn, Chicago, IL, Steven L. Skahn, Grand Rapids, MI, for Hillsdale Tool & Mfg. Co.
James W. Smith, Hatch & Smith, Kalamazoo, MI, John R. Dresser, Dresser Law Office, P.C., Sturgis, MI, for Label Technique, Inc.
Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, Ross E. Chapman, Amy J. Glass, Deming, Hughey, Lewis, Allen & Chapman, P.C., Kalamazoo, MI, for Landscape Forms, Inc.
Millard N. Mayhall, Schroeder, DeGraw, Kendall & Mayhall, Marshall, MI, for Marshall Brass Co.
Dustin P. Ordway, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, MI, for Michigan Carton Corp.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Reed S. Oslan, Kirkland & Ellis, Chicago, IL, Richard W. Winchell, Elkhart, IN, Steven L. Skahn, Grand Rapids, MI, for Miles, Inc.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Thomas F. Karaba, Charles W. Siragusa, Crowley Barrett & Karaba, Ltd., Chicago, IL, Steven L. Skahn, Grand Rapids, MI, for O'Brien Corp.
Douglas W. VanEssen, Law, Weathers & Richardson, Grand Rapids, MI, for Production Plated Plastics, Inc.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, William A. Ruskin, Lord, Day & Lord, New York City, Steven L. Skahn, Grand Rapids, MI, for Reichhold Chemical, Inc.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Richard W. Paulen, Jean Leslie Doyle, Laurence Alan McHugh, Barnes & Thornburg, South Bend, IN, Cynthia S. Gillard, James V. Woodsmall, Warrick, Weaver & Boyn, Elkhart, IN, Steven L. Skahn, Grand Rapids, MI, for Rinker Boat Co.
Stephen P. Vella, John Gerald Gleeson, Harvey, Kruse, Westen & Milan, P.C., Troy, MI, for Scowcraft Co.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Richard W. Paulen, Jean Leslie Doyle, Laurence Alan McHugh, Barnes & Thornburg, South Bend, IN, Steven L. Skahn, Grand Rapids, MI, for Starcraft Corp., Youngdoor.
Kenneth R. Oosterhouse, Farr & Oosterhouse, Grand Rapids, MI, Susan H. Shumway, Pamela I.S. Missal, Shumway & Merle, Southport, CT, Steven L. Skahn, Grand Rapids, MI, for Uniroyal, Inc.
Jon R. Muth, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for the Upjohn Co.
Alvin D. Treado, Lague, Newman & Irish, Muskegon, MI, for Yard-Man, Inc.
Charles V. Sweeney, Arvid A. Sather, Raymond P. Taffora, Michael, Best & Friedrich, Madison, WI, for Anderson Development Co.
Edmund O. Battersby, Samuel I. Bernstein Law Office, Farmington Hills, MI, for Delta Mfg. Co.
Steven C. Kohl, Howard & Howard, P.C., Bloomfield, MI, Richard D. McCormick, Bott & Spencer, P.C., Muskegon, MI, for Ferro Corp.
Douglas G. McClure, Conlin, McKenney & Philbrick, P.C., Ann Arbor, MI, for 3M Co.
Daryl J. Mumford, Holmes, Mumford, Schubel, Norlander & Macfarlane, Battle Creek, MI, for Wesley Carter.
Wesley Carter, pro se.
John L. Collins, Charles E. Barbieri, Foster, Swift, Collins & Smith, P.C., Lansing, MI, for Thomas Solvent Co., Richard Thomas.
John L. Collins, Charles E. Barbieri, Foster, Swift, Collins & Smith, P.C., James M. Sullivan, Sullivan, Hamilton, Schulz, Allen & Letzring, Battle Creek, MI, for Thomas Solvent Co. of Detroit, Inc., Thomas Solvent Co. of Muskegon, Inc., Thomas Solvent, Inc. of Indiana, TSC Transp., Inc.
*1128 James M. Sullivan, Sullivan, Hamilton, Schulz, Allen & Letzring, Battle Creek, MI, for Carol J. Thomas, Steven R. Thomas, Gregg S. Thomas, Todd M. Thomas, Richard E. Thomas Living Trust.
Frederick J. Dindoffer, R. Craig Hupp, Bodman, Longley & Dahling, Detroit, MI, for Grand Trunk Western R. Co.
Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, John A. Ferroli, Dykema Gossett, Grand Rapids, MI, for Federal-Mogul Corp., James River Corp. of Virginia.
Erica Lynn Dolgin, Thomas J. Pauloski, Schiff, Hardin & Waite, Chicago, IL, for Glas-Tec, Inc.
Michael B. Ortega, Reed, Stover & O'Connor, P.C., Kalamazoo, MI, for Interkal, Inc.
John Gerald Gleeson, Howard & Howard, P.C., Bloomfield Hills, MI, Stephen P. Vella, John Gerald Gleeson, Harvey, Kruse, Westen & Milan, P.C., Troy, MI, for Kysor Indus. Corp.
William H. Merrill, Charles M. Denton, Michael F. Kelly, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Square D Co.
John R. Dresser, Dresser Law Office, P.C., Sturgis, MI, for the Grav-I-Flo Corp.

OPINION
ROBERT HOLMES BELL, District Judge.
Before the Court at this time are the Plaintiff Grand Trunk Western Railroad Company's ("Grand Trunk") and Defendant Rieth-Riley Construction Company's ("Rieth-Riley") cross-motions for partial summary judgment and summary judgment, respectively. The question in this case is whether Rieth-Riley is an "owner" or "operator" of a loading dock on land not belonging to it but over which it holds an easement for ingress and egress.

I
Rieth-Riley owns a parcel of land in Battle Creek which is bounded on the south and west by property owned by Grand Trunk, on the east by Raymond Road, a public road which runs in a northerly-southerly direction, and on the north by a parcel of land once owned by the Blue Diamond Lumber Company ("Blue Diamond"). To the north of the Blue Diamond and Grand Trunk parcels is Emmett Street, a public road which runs in an easterly-westerly direction. The Rieth-Riley parcel has no direct access to Emmett Street. The Grand Trunk parcel is west of both the Blue Diamond and the Rieth-Riley parcels. See generally Def.'s Mot. for Summ.J., Ex. 1.
In 1958, Grand Trunk conveyed to Rieth-Riley a forty-foot-wide easement for ingress and egress ("the easement property") over the eastern forty feet of the Grand Trunk parcel. The express purpose of the easement was to provide Rieth-Riley with access to Emmett Street. The easement agreement reserved in Grand Trunk the right to use the easement property in common with Rieth-Riley. Rieth-Riley has used its easement on only one or two occasions.
In 1962, Blue Diamond leased a part of the Grand Trunk parcel from Grand Trunk and received the permission of Grand Trunk to construct a loading dock on the property. Most of this loading dock is located within the easement property. Blue Diamond also received the permission of Rieth-Riley to build the loading dock in the easement property. Pursuant to an agreement between Blue Diamond and Rieth-Riley, Blue Diamond agreed that "its use of the [easement] property would not exclude or prevent Rieth-Riley's use of the premises as a right-of-way for ingress and egress and for passage between [Rieth-Riley's] premises and Emmett Street," Def.'s Mot. for Summ.J., Ex. 4, ¶ 6, and Rieth-Riley granted to Blue Diamond
the right to store any of its stock of lumber or builders [sic] supplies or any of their machinery or equipment in that part of the premises held by [Rieth-Riley] under Agreement with Grand Trunk. . . .
* * * * * *
11. [Blue Diamond] shall not permit any storage or use of any of the real estate referred to in this agreement to be conducted in such manner as will interfere *1129 with any of the operations of [Rieth-Riley], and including, but not limited to, the right-of-way and the rights of ingress and egress to and from said Emmett Street and the real estate of [Rieth-Riley] located southerly of the real estate of [Blue Diamond]. In the event at anytime hereafter [Rieth-Riley] should deem that the use of any part of such real estate by [Blue Diamond] or any conditions which [Blue Diamond] permits to exist on such real estate should interfere with any operations of [Rieth-Riley] ... [Rieth-Riley is] accorded the privilege of notifying [Blue Diamond] as to the use or conditions which [Rieth-Riley] deem[s] to interfere with their use. [Blue Diamond] shall have a period of fifteen (15) days after the receipt of such notice within which to permanently correct any conditions or use which [Rieth-Riley] deem[s] to interfere with their operations....
Def.'s Mot. for Summ.J., Ex. 4, ¶¶ 7, 11. Apparently, at the same time, Blue Diamond also deeded to Rieth-Riley a small triangular-shaped parcel of land in the southwestern corner of Blue Diamond's land ("the triangular parcel") so that Rieth-Riley would have access to the loading dock. It appears that a portion of the loading dock extends into the triangular parcel.
Grand Trunk also leased part of its property to the Thomas Solvent Company ("Thomas Solvent"). The parcel which Thomas Solvent leased was the easterly part of Grand Trunk's parcel except that it did not include any part of the land leased to Blue Diamond, upon which Blue Diamond constructed the loading dock, or of the easement property. Thomas Solvent carried on operations at this location for many years. This site is known as the Thomas Solvent Annex. Thomas Solvent used the loading dock for storing barrels containing hazardous waste materials, many of which apparently leaked or were spilled.
Grand Trunk brought this action against Rieth-Riley pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)[1] and Section 12 of the Michigan Environmental Response Act (MERA).[2]
Rieth-Riley's motion seeks summary judgment with regard to Grand Trunk's claim seeking to impose liability against Rieth-Riley as an owner or operator of the easement property. Grand Trunk's motion seeks summary judgment against Rieth-Riley as to the question of liability with regard to the easement property and the entire loading dock including that portion of it allegedly located on Rieth-Riley's triangular parcel.

II
The parties' motions seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In its resolving of these motions, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53, 106 S.Ct. 2505, 2511-13, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of showing that there is an absence of evidence to support a claim, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54, *1130 91 L.Ed.2d 265 (1986). Thus, the party opposing the motion must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257, 106 S.Ct. at 2514. If, after a sufficient time for discovery, that party is unable to demonstrate that it can produce sufficient evidence at trial to withstand a directed verdict motion, summary judgment is appropriate. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

III
The Court begins its analysis by considering the parties' motions with regard to the easement property.

A
Section 3 of MERA defines the terms "operator" and "owner" as they are used in MERA:
(t) "Operator" means a person that is in control of or responsible for the operation of a facility. Operator does not include any of the following:
* * * * * *
(v) A person that holds an easement interest in a facility for the purpose of conveying or providing goods or service, including, but not limited to, utilities, sewers, roads, railways, and pipelines; or a person that acquires access through an easement. The exclusion provided in this subparagraph shall not apply to a person that holds an easement if that person caused or contributed to a release or threat of release, or if equipment owned or operated by that person caused or contributed to the release or threat of release.
MICH.COMP.LAWS § 299.603(t)(v) (emphasis added). "`Owner' means a person that owns a facility." MICH.COMP.LAWS § 299.603(u). The definition of "owner" contains the same exception as does "operator" for "a person that acquires access through an easement." MICH.COMP.LAWS § 299.603(u)(vi).
In light of this exception, this Court concludes that MERA expressly excludes Rieth-Riley from the class of persons liable under Section 12 of MERA with regard to the easement property. Grand Trunk's argument that this exception does not apply to Rieth-Riley since part of the loading dock is allegedly located on Rieth-Riley's property is without merit. Whether this is true or not is irrelevant since it does not remove Rieth-Riley from fitting squarely within this exception with regard to the easement property. If, in fact, a portion of the loading dock is on Rieth-Riley's parcel, it may be liable for contamination coming from barrels stored on this portion of the loading dock. In that case, Rieth-Riley would be liable, if at all, as the owner of the site and the easement-holder exception would not apply since Rieth-Riley does not, and indeed could not, hold an easement over its own parcel held in fee simple.

B
The Court's resolving of Rieth-Riley's motion with regard to CERCLA would be simple if CERCLA's definitions of "owner" and "operator" were as helpful as MERA's. Such is not the case. Section 101(20)(A) of CERCLA defines the term "owner or operator":[3]
The term "owner or operator" means . . . (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility. . . . Such term does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility.
42 U.S.C. § 9601(20)(A).[4] "The circularity [of this definition] strongly implies . . . that *1131 the statutory terms have their ordinary meanings rather than unusual or technical meanings." Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 156 (7th Cir.1988).
While Rieth-Riley "owns" an interest in the easement, see RESTATEMENT OF PROPERTY § 450(a) (1936), it does not own the easement property. An "owner" is
[t]he person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his rights.
BLACK'S LAW DICTIONARY 996 (5th ed. 1979). The only entity which owns the easement property in this sense is Grand Trunk as holder of the fee interest in the land, and possibly Blue Diamond, as to the portion of the easement property that it leased from Grand Trunk, as the holder of a leasehold interest in that property. However, this Court concludes that Rieth-Riley is not an owner of the easement property within the ordinary meaning of "owner" and, accordingly, is the Section 107(a) owner of neither the easement property nor that part of the loading dock within the easement property. See Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust, 32 F.3d 1364, 1368 (9th Cir.1994).
Grand Trunk's argument that Rieth-Riley is an operator of the easement property, including the loading dock located therein, is a closer question. The Court has reviewed many cases which consider the extent of operator liability under Section 107(a). Most of these cases do so in the context of determining the extent of protection provided by the corporate structure. That is, the cases consider, with regard to Corporation X which is an operator of a facility, to what extent Corporation Y, a related corporation, or a shareholder, director, or officer of Corporation X, also incurs liability as an operator of the facility. See, e.g., Donahey v. Bogle, 987 F.2d 1250, 1254 (6th Cir.1993), vacated on another issue sub nom Livingstone v. Donahey, ___ U.S. ___, 114 S.Ct. 2668, 129 L.Ed.2d 805 (1994); Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1221 (3d Cir.1993); FMC Corp. v. Aero Indus., 998 F.2d 842 (10th Cir.1993); United States v. Carolina Transformer Co., 978 F.2d 832 (4th Cir.1992); Riverside Mkt. Dev. Co. v. International Building Prods., Inc., 931 F.2d 327 (5th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991); United States v. Kayser-Roth Corp., 910 F.2d 24 (1st Cir.1990), cert. denied, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); N.Y. v. Shore Realty Corp., 759 F.2d 1032 (2d Cir.1985). That is not the issue before the Court in the instant case which makes these cases of less importance to the Court's analysis. Several cases, on the other hand, have considered the extent of operator liability where the issue was not the extent of protection provided by the corporate structure. See, e.g., Long Beach, 32 F.3d 1364; Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp., 976 F.2d 1338 (9th Cir.1992); Nurad, Inc. v. William E. Hooper & Sons Co., 966 F.2d 837 (4th Cir.), cert. denied sub nom Mumaw v. Nurad, Inc., ___ U.S. ___, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992); Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155 (7th Cir.1988); United States v. Dart Indus., 847 F.2d 144 (4th Cir.1988); CPC Int'l, Inc. v. Aerojet-General Corp., 731 F.Supp. 783 (W.D.Mich.1989). The Court finds these cases more persuasive in resolving the instant case.
Though not in agreement on all points, these cases agree that a person will be liable as an operator of a facility if the person has sufficient authority to control the operational decisions of another who is the *1132 operator of the facility. Thus, if Corporation X is an operator of a facility, and Corporation Y has sufficient authority to control the operational decisions of Corporation X, then Corporation Y will also be liable as an operator of the facility. See Edward Hines Lumber, 861 F.2d at 158 (holding that the defendant was not an operator since it "did not interfere with operational decisions"); Nurad, 966 F.2d at 842 ("the [district] court's decision quite properly turned on the fact that [the defendants] lacked `authority to control the operations or decisions involving the disposal of hazardous substances at the Site'"); United States v. Fleet Factors Corp., 901 F.2d 1550, 1557-58 (11th Cir.1990) (implying that a person is an operator if it "involve[s] itself in the day-to-day operation of the facility" or "participate[s] in management decisions relating to hazardous waste"), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). In the instant case, Rieth-Riley exerted no such control over the decisions of Thomas Solvent regarding the disposal or storage of its hazardous wastes, and indeed Rieth-Riley had no authority to so control these decisions of Thomas Solvent. Thomas Solvent could have dumped the wastes onto the loading dock rather than simply storing the barrels on it or stored the barrels in another location. Clearly, then, Rieth-Riley had no authority to control either the method or location of the disposal or storage of Thomas Solvent's wastes.
Grand Trunk argues that, by virtue of its easement, Rieth-Riley had the authority to require Thomas Solvent to move any barrels which impeded Rieth-Riley's use of its easement. However, there are at least three reasons why this argument fails. First, the Court recognizes that Rieth-Riley had, at all times since 1958, the right to use the easement property for ingress and egress purposes. Coupled with this right is a right to use the easement property free of interfering uses. What does this mean in the instant case where Rieth-Riley used the easement only once or twice in more than thirty years? It seems to the Court that this means that Rieth-Riley had the right to require interfering rights to cease if and when it chose to use the easement. See Murphy Chair Co. v. American Radiator Co., 172 Mich. 14, 28-29, 137 N.W. 791 (1912) ("[T]he grantor of the easement of a right of way may use the way in any manner he sees fit, provided he does not unreasonably interfere with the grantee's reasonable use in passing to and from."). Since Rieth-Riley used its easement only once or twice, Thomas Solvent's use of the loading dock, other than at these times, did not interfere with Rieth-Riley's use of its easement.
Second, even if the Court found that Thomas Solvent's use of the loading dock interfered with Rieth-Riley's right to use its easement, Rieth-Riley's right to control Thomas Solvent's use was limited by the agreement between Rieth-Riley and Blue Diamond. Since Blue Diamond has fifteen days to remove items obstructing Rieth-Riley's use of the easement, Rieth-Riley waived its right to demand immediate removal of the items.
Finally, even were the Court to conclude that Rieth-Riley had the right to prevent Thomas Solvent's storing of barrels within the easement at all times, its failure to have done so does not make it an operator. The Court finds the case of United States v. Dart Industries instructive here. In Dart, the Fourth Circuit considered whether the South Carolina Department of Health and Environmental Control (DHEC) was liable as an operator:[5]
DHEC approved or disapproved applications to store wastes at Fort Lawn, inspected the site, and required proper transportation of the wastes delivered to Fort Lawn. However, there is no allegation that DHEC went beyond this governmental supervision and directly managed Carolawn's employees or finances at the Fort Lawn Site. Thus, this court finds that DHEC is not an owner or operator under § 9601(20)(A)(iii).
* * * * * *
As with the claim under § 9601(20)(A)(iii) these allegations that DHEC did not properly *1133 monitor the site or facilitate the cleanup fail to characterize DHEC as an owner or operator. The generators are unable to specify any `hands on' activities by DHEC that contributed to the release of hazardous wastes. The district court appropriately described DHEC's activities as merely `a series of regulatory action.'
* * * * * *
This court does not dispute that DHEC may have inadequately enforced the state environmental regulations. However, such unfortunate deficiencies do not constitute ownership or control as defined in § 9607; thus DHEC is not liable as an owner or operator under § 9607.
Dart Indus., 847 F.2d at 146 (emphasis added). Cf. CPC Int'l, 731 F.Supp. at 788 ("I find this activity substantially different from DHEC['s] . . . in Dart. Such regulatory activity will ordinarily not designate one as an owner-operator, but where a party assumes control of an activity and then fails to perform, that party should bear the responsibility for any pollution which results."). Even more persuasive is the recently decided case of Long Beach Unified Sch. Dist. v. Dorothy B. Godwin Cal. Living Trust. In Long Beach, as in the instant case, the plaintiff sought to hold an easement holder liable as an operator. The Ninth Circuit dismissed this argument:
But the district doesn't allege that M & P's pipelines are leaking toxic waste, nor is there anything on the record to suggest this is the case. Rather, the district merely points to the fact that defendants' pipelines crossed Schafer's waste pit and claims this put defendants "in a position to prevent" the contamination.
This allegation is not sufficient to render the defendants operators under the statute. To be an operator of a hazardous waste facility, a party must do more than stand by and fail to prevent the contamination. It must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management.

Long Beach, 32 F.3d at 1366-1368 (emphasis added).[6] Similarly, Rieth-Riley's failure to exert whatever right it had is insufficient to make it liable as an operator since it had no control over Thomas Solvent's internal decisions regarding waste disposal and storage, it had no hands-on involvement contributing to the release, and it never assumed control of the disposal or storage of Thomas Solvent's wastes.
Thus, the Court concludes that Rieth-Riley lacked the authority to prevent Thomas Solvent's use of the loading dock for its storing of barrels, or, at best, had a very limited power to do so. But even if Rieth-Riley had such authority, this is insufficient to establish liability against Rieth-Riley as an operator since it did not exert any amount of actual control over Thomas Solvent's disposal or storage of hazardous wastes.

IV
Finally, the Court considers Grand Trunk's motion for partial summary judgment seeking judgment as to liability against Rieth-Riley with regard to the portion of the loading dock allegedly located on the Rieth-Riley's triangular parcel. The Court will deny this motion since there are genuine issues of material fact including whether any part of the loading dock is even on the triangular parcel, whether this parcel is a part of the Superfund site, and whether a release occurred on this parcel.

V
Accordingly, the Court will grant Rieth-Riley's motion for summary judgment since the Court concludes, as a matter of law, that Rieth-Riley is neither an owner nor an operator, within the meaning of Section 107(a) of *1134 CERCLA or Section 12 of MERA, of the loading dock located within the easement property. Further, the Court will deny Grand Trunk's motion for partial summary judgment, in part for the reasons stated for the granting of Rieth-Riley's motion, and in part because there exists genuine issues of material fact as to Rieth-Riley's potential liability with regard to any portion of the loading dock located on Rieth-Riley's triangular parcel.
An order consistent with this opinion will be entered.

ORDER
In accordance with the opinion entered this date,
IT IS ORDERED AND ADJUDGED that Plaintiff Grand Trunk Western Railroad Company's motion for partial summary judgment (docket # 1232) is DENIED.
IT IS FURTHER ORDERED AND ADJUDGED that Defendant Rieth-Riley Construction Company's motion for summary judgment (docket # 1214) is GRANTED.
IT IS FURTHER ORDERED AND ADJUDGED that judgment be entered for Defendant Rieth-Riley Construction Company on the issue of its liability with regard to the loading dock on the easement property.
NOTES
[1] Section 107 of CERCLA provides in part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section 
(1) the owner and operator of a vessel or a facility ... shall be liable....
42 U.S.C. § 9607(a).
[2] Section 12 of MERA provides in part:

(1) Notwithstanding any other provision or rule of law and subject only to the defenses set forth in sections 12a and 12b, if there is a release or threatened release from a facility that causes the incurrence of response activity costs, the following persons shall be liable under this section:
(a) The owner or operator of the facility.
MICH.COMP.LAWS § 299.612(1).
[3] Section 107(a)(1) uses the conjunctive "and" to join the words "owner" and "operator," while Section 101(20)(A) uses the disjunctive "or." There is general consensus that the words are to be understood as disjunctive, such that a party can be a covered person by being either an owner or an operator or both.
[4] Grand Trunk argues that the fact that MERA expressly excludes easement holders from its definition of "operator" and "owner" implies that CERCLA's failure to do the same means that an easement holder is within the CERCLA definition of "owner or operator." Such a negative inference is unwarranted. Since MERA was enacted nearly three years after CERCLA, it is clear that CERCLA was not patterned after MERA. Only if CERCLA were patterned after MERA or another statute with an easement-holder exception would such a deletion give rise to the negative inference argued by Grand Trunk. While MERA's inclusion of the easement-holder exception may give some indication of its drafters' intent, it indicates nothing about the intent of Congress in drafting CERCLA.
[5] While Dart considered DHEC's liability under Section 9601(20)(A)(iii) rather than under 9601(20)(A)(ii), the analysis in Dart is equally applicable in the instant case.
[6] Grand Trunk urges the Court not to adopt the reasoning of Long Beach on the basis that it advances the "actual control" test rather than the "authority to control" test adopted by the Sixth Circuit in Donahey. The Court notes, however, that Donahey does not discuss which test should be applied (in fact, two of the three cases that Donahey cites in this regard are "actual control" cases), that it has been vacated by the Supreme Court (albeit on another ground), and that, as indicated supra, it dealt with the extent of protection afforded by the corporate structure, a significantly different issue from the one in the instant case.