987 F.2d 1250
 36 ERC 1205, 61 USLW 2579, 23 Envtl.
L. Rep. 20,527
 Richard M. DONAHEY and Patricia A. Donahey,
Plaintiffs-Appellants, Cross-Appellees,
v.
Helen L. BOGLE, Defendant-Appellee, Cross-Appellant,
Seabourne S. Livingstone; H. Gordon Wood; and St. Clair
Rubber Company, a Michigan corporation, jointly
and severally, Defendants-Appellees.
 Nos. 92-1128, 92-1151.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 20, 1992.
Decided March 9, 1993.
Rehearing and Rehearing En Banc
Denied June 15, 1993.
 
 1
 H.G. Sparrow, III (argued and briefed), Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, for plaintiffs-appellants, cross-appellees.
 
 
 2
 Jay E. Brant, Mark A. Goldsmith (argued), Daniel G. Helton (briefed), Honigman, Miller, Schwartz & Cohn, Detroit, MI, for defendant-appellee, cross-appellant.
 
 
 3
 Henry N. Carnaby, Bodman, Longley & Dahling, Troy, MI, for Seabourne S. Livingstone.
 
 
 4
 Robert G. Kamenec (briefed), Plunkett & Cooney, Detroit, MI, for St. Clair Rubber Co.
 
 
 5
 Before: KEITH and JONES, Circuit Judges; and ALLEN, Senior District Judge.*
 
 
 6
 CHARLES M. ALLEN, Senior District Judge.
 
 
 7
 The appeals and cross appeals of the parties arise out of a judgment entered following a lengthy bench trial and a 48-page Findings of Fact and Conclusions of Law. The issues presented to the trial court and to this Court involve the respective rights of the Donaheys and Helen Bogle under Michigan land purchase law and the rights and liabilities of all the parties under the Comprehensive Environmental Response Compensation and Liability Act (hereinafter CERCLA), 42 U.S.C. § 9601 et seq.
 
 
 8
 The Donaheys appealed from the judgment of the trial court holding that Richard Donahey was liable under his land purchase contract to Helen Bogle. In addition the Donaheys appealed from the judgment of the trial court that their claims under CERCLA were without merit and that they were not entitled to declaratory judgment relief for future cleanup of the property purchased by the Donaheys. Helen Bogle appeals from the judgment which held that she was a "responsible party" under CERCLA and she contends that she is entitled to a monetary judgment in excess of that awarded by the trial court. Both Helen Bogle and the Donaheys challenge the findings of the court that Seabourne Livingstone was not a "responsible party" under CERCLA.
 
 
 9
 In 1962, St. Clair Rubber Company rented Marysville, Michigan property for a period of ten years. The lessor was Helen Bogle, who is the sister of Seabourne Livingstone, the sole stockholder of all the stock of St. Clair Rubber Company. The property was again leased in 1972 for another ten year period.
 
 
 10
 St. Clair's manufacturing processes left a waste product that was combined with a solvent. This mixture was drained into 55 gallon drums and designated as sludge. In the early 1970s, St. Clair transported 12 to 20 barrels or drums of sludge to the property every six months for disposal. After allowing the sludge to drain from the barrels for approximately one week, the employees returned to burn the sludge. Some time in the 1970s, St. Clair stopped its dumping and burning at the property.
 
 
 11
 In 1981, Bogle listed the property for sale. Donahey, the majority stockholder of a manufacturing firm, inspected the property and charted an area used as a dump. His attorney sent a letter to Bogle expressing concern over the presence of a "dump." To allay concern, St. Clair and Donahey entered into an "Agreement to Clean Up Dump", in which St. Clair promised to remove any hazardous substances found on the property and to restore the land to an environmentally satisfactory condition. The agreement included St. Clair's promise to indemnify Donahey for costs resulting from St. Clair's contamination of the land.
 
 
 12
 On the same day in 1982 on which Donahey and St. Clair executed the clean up agreement, Donahey purchased the property from Bogle for $115,000. Their contract provided for a down payment of $28,750, with the balance of the purchase price to be paid over a period of ten years at 11% interest in monthly installments of $980.31.
 
 
 13
 In 1985, following the publication of a newspaper article revealing the existence of environmental contamination at the site, the Michigan Department of Natural Resources (hereinafter "MDNR") sent letters designating each party to this law suit a "potentially responsible party," and requesting certain monitoring and clean-up activities. In 1986, the Donaheys employed an environmental consultant, Lawrence Halfen, to advise them with respect to the contaminated property.
 
 
 14
 Dr. Halfen's preliminary investigation found a number of rusting and corroding barrels and non-hazardous waste materials which posed no immediate threat to the environment. After receiving authorization to proceed, he began work in August 1987, collecting and disposing of these old barrels and other materials. He removed approximately 350 cubic yards of material from the site at a cost of approximately $28,000.
 
 
 15
 However, at the end of the third day of removing the barrels and scraping the site, workers discovered five pits that contained hazardous substances. Dr. Halfen decided to address the problem on a temporary basis. He removed the materials from the pits so that he could assess their nature and volume. After draining the lagoon, he consolidated the pit materials with contaminated and uncontaminated soils taken from other areas at the site and placed the mixture in the lagoon basin. He placed a cap over the mound of materials, erected a snow fence around the area, and obstructed roadway access to the site.
 
 
 16
 Dr. Halfen characterized his treatment of the materials as a judgment call in the face of an immediate threat. He did not seek the advice of the MDNR. He completed his operations in late August 1987, and on September 1, 1987, he telephoned the MDNR representative to explain what he had found and what he had done. The MDNR never communicated to Donahey or to Dr. Halfen any protests about the work that Dr. Halfen did.
 
 
 17
 Subsequently, Dr. Halfen proposed further clean up measures at an estimated cost of $447,500. Unwilling to undertake the cost of further clean up efforts, the Donaheys abandoned the property in 1990.
 
 
 18
 The Donaheys filed suit asserting statutory and common law causes of action against Bogle, St. Clair Rubber and Seabourne Livingstone. They sought to rescind the purchase contract with Bogle, to recover costs incurred in attempting to clean up the environmental situation, and to recover attorneys fees of more than $279,000 incurred in these proceedings. By counterclaim, Ms. Bogle alleged a breach of the land purchase contract and failure to pay the sums due under that contract and she sought a judgment for the unpaid amounts plus interest. In addition, she asked for a declaration that she was not a covered party under CERCLA, and that Livingstone, Mr. Donahey and Mrs. Donahey were all covered parties.
 
 
 19
 The matter of rescission was first addressed on a summary judgment motion by District Judge Harvey, who found that the Donaheys were not entitled to rescission. After trial, District Judge Zatkoff reiterated that ruling, and made additional findings and conclusions, including the following pertinent to these appeals:
 
 
 20
 1. Mrs. Bogle was entitled to judgment for the unpaid balance owing on the land purchase contract plus interest on past due payments at the rate of 11% per year from June 8, 1987 until March 14, 1989 (the date of filing of the counterclaim), together with pre-judgment interest from March 14, 1989 to the date of the judgment and judgment interest after the date of judgment.
 
 
 21
 2. Richard Donahey, Helen Bogle and St. Clair Rubber were covered persons under 42 U.S.C. § 9601 et seq. with respect to the environmental contamination at issue, but neither Pat Donahey nor Livingstone were covered persons.
 
 
 22
 3. None of the parties had incurred any recoverable response costs under CERCLA and the Donaheys were not entitled to a declaration of future liability pursuant to 42 U.S.C. § 9613(g)(2).
 
 
 23
 4. Richard Donahey was required to accept title to the property and if he failed to do so, Mrs. Bogle was entitled to present the judgment as deed of ownership to Richard Donahey.
 
 
 24
 5. Mrs. Bogle had no cause of action against St. Clair Rubber, Livingstone, and the Donaheys under CERCLA.
 
 
 25
 Before reaching the question of who is responsible for the cost of clean up, we must first dispose of the argument of Donahey that he is entitled to rescind the contract for the purchase of the land. He argues that the environmental contaminants that he discovered after the purchase contract was executed constituted an encumbrance that prevented Bogle's transferring clear title to the property. The trial judge properly held that an "encumbrance" is a mortgage or a mechanics lien or tax lien or something of that nature that diminishes the value of the title to the property; environmental contaminants may diminish the value of the realty, but they do not constitute an encumbrance because they do not affect title. Furthermore, the contract between Donahey and St. Clair, by which St. Clair agreed to clean up the environmental contamination provided the trial court with ample evidence to support the determination that Donahey knew before purchase that there were environmental contaminants on the property.
 
 
 26
 The trial judge was also correct in finding that Donahey had breached the contract with Bogle. The record clearly shows that as early as 1987 Donahey stated that he would not make any further payments on the real estate contract. This was anticipatory breach under Michigan law. Jackson v. American Can Co., Inc., 485 F.Supp. 370 (W.D.Mich.1980), and Brauer v. Hobbs, 151 Mich.App. 769, 391 N.W.2d 482 (1986).
 
 
 27
 Bogle contends that the trial court erred in calculating interest on her monetary award and that she is entitled to both statutory and contractual interest from March 14, 1989 to the date of judgment. The only Michigan authority cited on this point, McGraw v. Parsons, 142 Mich.App. 22, 369 N.W.2d 251 (1985), fully supports Bogle's position.
 
 
 28
 We turn next to the issues raised under CERCLA. First, the trial court held that the Donaheys were not entitled to recover any costs under CERCLA for the actions which they took in an attempt to cleanup the property. Secondly, it held that Richard Donahey, Bogle, and St. Clair Rubber were responsible parties for the contamination of the property under 42 U.S.C. § 9607 but also held that Seabourne Livingstone was not liable as an owner or operator because he did not actively participate in the day-to-day activities of the corporation and had no knowledge of the environmental contamination created by it. In addition Bogle appeals from the findings that she was a responsible party as a former owner of the property, and also appeals from the court's findings that Patricia Donahey was not a covered person under 42 U.S.C. § 9607(a).
 
 
 29
 The trial court correctly found that Richard Donahey and Helen Bogle and St. Clair were "responsible parties" under 42 U.S.C. § 9607(a). However, the court erred in concluding that Seabourne Livingstone was not liable as an owner under CERCLA. The evidence clearly established that Livingstone had the authority to prevent the contamination of the property by his corporation; thus, as a matter of law, Livingstone was a responsible party. Kelley v. Thomas Solvent Co., 727 F.Supp. 1532 (W.D.Mich.1989); New York v. Shore Realty Corp., 759 F.2d 1032, 1043 (2d Cir.1985); U.S. v. Ward, 618 F.Supp. 884 (E.D.N.C.1985); and U.S. v. Northeastern Pharmaceutical & Chemical Co., 810 F.2d 726 (8th Cir.1986).
 
 
 30
 The trial court rejected the contention that Halfen's actions were a legitimate "judgment call," and concluded that the Donaheys were not entitled to recover any of their costs incurred in the attempt to clean up the property. In making that determination, the court relied upon evidence that the substances discovered at the property were hazardous wastes within the meaning of Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6903(5). Section 6903(5) defines hazardous waste as a compound that may cause death or serious permanent illness or pose a health risk when improperly stored. ENVIRONMENTAL PROTECTION AGENCY regulations define hazardous waste at 40 C.F.R. 261.31, and among the chemicals so designated are benzene, toluene, and xylene, substances used in St. Clair's rubber manufacturing processes and in churn-washing procedures at St. Clair. Halfen's testimony corroborated the Judge's finding with reference to hazardous wastes.
 
 
 31
 The trial court found that the Donaheys' clean up effort did not comply with RCRA regulations in that Donahey failed to obtain an RCRA permit and failed to conduct a detailed physical and chemical analysis of a representative sample. See 40 C.F.R. § 270.1(c)(1)(ii), and 40 C.F.R. § 264.13. The court also found that the Donaheys had failed to secure the site against unknowing and unauthorized entry by persons or livestock, and based his finding on evidence that the Donaheys had merely placed a snow fence around the consolidated pile in the large lagoon. The court also found that the Donaheys did not receive a permit or permit waiver for their storage of hazardous waste.
 
 
 32
 The trial court further relied on evidence that the Donaheys provided no drainage control, and that the consolidation of the wastes in the large lagoon increased the surface area of waste exposed to top soil by 50%. The court also found that by relocating the waste from the rubber pile to the large lagoon, Halfen spread the contamination to a relatively untainted portion of the property. Based on these factors, the trial court held that the Donaheys' actions did not facilitate the goals underlying CERCLA nor did they in any way improve the condition of the defiled property.
 
 
 33
 In order to recover the costs incurred in employing Halfen and attempting to improve the environmental condition of their property, the Donaheys are required to show that the property on which hazardous substances were contained was a facility under CERCLA's definition of that term, that the release or threatened release of any hazardous substance from the facility had occurred, that such release or threatened release caused them to incur response costs that were necessary and consistent with the National Contingency Plan (NCP), and that defendant was one of the statutory classes of persons subject to liability. 3550 Stevens Creek Assoc. v. Barclays Bank, 915 F.2d 1355 (9th Cir.1990). In applying these standards to this case, the trial judge correctly held that an element of the Donaheys' prima facie case was a showing that the response costs incurred were consistent with or substantially in compliance with the NCP.
 
 
 34
 The trial court's findings that the cleanup work attempted by Halfen actually did more damage than benefit is substantiated by the testimony of Hunt, an expert witness, who stated that when Halfen consolidated non-hazardous material with hazardous material he contaminated the non-hazardous so that it would all have to be treated as hazardous. That, in turn, would make disposal much more complicated and expensive. Hunt estimated that it would have cost $305,000 in 1987 to dispose of the 1200 yards of material mounded in the lagoon, whereas it would have cost only $178,000 to dispose of the 800 yards of material actually taken from the pits. Additionally, Hunt testified that Halfen had increased the health risks by creating an attractive nuisance and by necessitating repeated human contact with the hazardous material.
 
 
 35
 Although consistency with the NCP is a necessary element for recovery of remedial costs, it does not necessarily follow that consistency with the NCP is required for recovery of monitoring or investigative costs. In Carlyle Piermont Corp. v. Federal Paper Board Co., 742 F.Supp. 814 (S.D.N.Y.1990), the Court held that such costs are recoverable without regard to compliance with the NCP. See also Artesian Water Co. v. Government of New Castle County, 851 F.2d 643 (3rd Cir.1988) (monitoring and impact evaluation costs recoverable regardless of existence of other compensable response costs). This Court believes the Carlyle Piermont reasoning on the instant issue is sound, and we will remand for award of the Donaheys' initial investigation costs.
 
 
 36
 Plaintiffs appealed from the decision of the trial court refusing to award them attorneys fees of $279,000. The trial court's refusal rests primarily on the American Rule, although he also points out that there is specific statutory authorization for the government to recover attorneys fees and no such specific authorization for private parties. However, this Court prefers to follow the reasoning of cases such as Bolin v. Cessna Aircraft Co., 759 F.Supp. 692 (D.Kan.1991), Shapiro v. Alexanderson, 741 F.Supp. 472 (S.D.N.Y.1990), and General Electric Co. v. Litton, 920 F.2d 1415 (8th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). The Bolin opinion made the following persuasive statement:
 
 
 37
 By providing private parties with a federal cause of action for the recovery of necessary expenses in the cleanup of hazardous wastes, Congress intended § 107 as a powerful incentive for these parties to expend their own funds initially without waiting for the responsible persons to take action. [citations omitted]. The court can conceive of no surer method to defeat this purpose than to require private parties to shoulder the financial burden of the very litigation that is necessary to recover these costs.
 
 
 38
 759 F.Supp. at 710.
 
 
 39
 In following cases cited immediately above, we recognize that there are several cases to the contrary, such as T & E Industries, Inc. v. Safety Light Corp., 680 F.Supp. 696 (D.N.J.1988); Mesiti v. Microdot, Inc., 739 F.Supp. 57 (D.N.H.1990); Regan v. The Cherry Corporation, 706 F.Supp. 145 (D.R.I.1989).
 
 
 40
 We recognize that the Donaheys' complaint included ten causes of action, and that the only recovery they have achieved is the very small amount awarded for investigative costs. We remand to the district court the question of amount of attorneys fees in light of the above observations.
 
 
 41
 In conclusion, the judgment of the trial court is affirmed as to all aspects of the case except for the following:
 
 
 42
 1. The judgment is reversed insofar as it does not consider Seabourne Livingstone a responsible party under CERCLA.
 
 
 43
 2. The judgment is vacated with respect to cost of investigation, and the matter is remanded for determination and award of these costs.
 
 
 44
 3. The judgment is vacated with respect to the interest recoverable by Helen Bogle, and the matter is remanded for determination and award of statutory and contractual interest from March 14, 1989 to the date of judgment in lieu of the pre-judgment interest which the trial judge awarded her for that period of time.
 
 
 45
 4. The judgment denying attorneys fees in toto is vacated, and the matter remanded for determination of what constitutes reasonable attorneys fees recoverable under CERCLA.
 
 
 
 *
 The Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation