89 F.3d 835
 43 ERC 1559, 65 USLW 2080
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PIERSON SAND & GRAVEL, INC., Plaintiff-Appellant,
v.
PIERSON TOWNSHIP, Keelor Brass Co., Chemetron Investments,
Inc., Defendants-Appellees.
 No. 94-1472.
 United States Court of Appeals, Sixth Circuit.
 June 18, 1996.
 
 Before: KEITH, JONES, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Pierson Sand & Gravel, Inc. ("Pierson Sand"), appeals a grant of summary judgment for the defendants in this action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") for recovery of costs incurred in the cleanup of hazardous wastes. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 Pursuant to CERCLA § 107, 42 U.S.C. § 9607, Pierson Sand is seeking recovery of past and future costs related to removal and remediation of the effects of hazardous wastes from a site known as the Central Sanitary Landfill ("landfill"). The subject property has been operated as a landfill since 1959. Until 1971, Pierson Township leased the landfill property from its owner and contracted with the owner to operate the landfill for the disposal of the refuse of Township residents. In 1971, six municipalities, including Pierson Township, entered into an agreement with the operators of the landfill to have wastes deposited there.
 
 
 3
 Toxic wastes were discovered in the landfill in 1976 and the Michigan Department of Natural Resources ("MDNR") supervised a cleanup. Pierson Sand purchased the landfill in 1984 and operated it under MDNR permits. It did not allow the deposit of known hazardous wastes at the landfill. In 1987, MDNR notified Pierson Sand that hazardous materials had been detected in ground water near the landfill. Pierson Sand later applied for a permit to expand the landfill. After MDNR denied that application, Pierson Sand sued MDNR, resulting in a consent judgment under which Pierson Sand was required to undertake remedial actions at the landfill in order to receive the permit. Pierson Sand brought this action for costs incurred as part of those efforts against those it contends are responsible for the deposit of the hazardous wastes but summary judgment was granted to the defendants.
 
 II.
 
 4
 This court reviews an order granting summary judgment de novo. City Mgmt. Corp. v. United States Chem. Co., 43 F.3d 244, 250 (6th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir.1994).
 
 III.
 
 5
 To prevail in a private cost recovery action, a plaintiff must establish that (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan," 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions of Section 107(a).
 
 
 6
 3550 Stevens Creek Assoc. v. Barclays Bank, 915 F.2d 1355, 1358 (9th Cir.1990) (citation and footnote omitted), cert. denied, 500 U.S. 917 (1991). The defendants assert that Pierson Sand has not established the third and fourth elements of this prima facie case.
 
 IV.
 
 7
 A private plaintiff seeking recovery of costs under CERCLA must demonstrate that those costs were incurred consistent with the national contingency plan ("NCP"). Id. The NCP is made up of regulations, promulgated by the EPA under the authority of 42 U.S.C. § 9605, which establish standards for the removal of hazardous substances. It provides: "A private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (5) and (6)...." 40 C.F.R. § 300.700(c)(3)(i).[1] Paragraph (6) of that section provides: "Private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action based on the provisions set out below, or based on substantially equivalent state and local requirements." Id. § (c)(6). Cleanups that deviate from the NCP in only an "immaterial or insubstantial" way must be deemed consistent with the NCP. Id. § (c)(4). The district court granted summary judgment to the defendants holding that because Pierson Sand had not provided sufficient opportunities for appropriate public comment, "Pierson Sand ... plainly failed to carry its burden of showing substantial compliance with the NCP."[2]
 
 
 8
 Pierson Sand contends that it provided an opportunity for public comment on August 16, 1989. In July 1989, a local newspaper notice stated that a public hearing was to be held on August 16 for the purpose of discussing Pierson Sand's application for a permit for a landfill to be constructed "adjacent to the existing Central Landfill." That hearing was held on that date. The "moderator" for that hearing, a representative of MDNR, opened by stating, "The purpose of tonight's hearing is to provide an opportunity for public input into the review process for the proposed expansion of the Central Sanitary Landfill...." The transcript of that meeting also indicates that, because MDNR made the expansion permit contingent on remediation of the effects of the hazardous wastes at the landfill, a cleanup was part of the plan discussed at this meeting. Local residents and a representative of Pierson Township were allowed to present concerns with the plan.
 
 
 9
 Pierson Sand contends that it provided another opportunity for public comment at a meeting in 1990. A notice of that meeting was published in local newspapers.[3] The notice listed neither a location nor specific purpose for the meeting. The notice stated that the meeting was to be held in November, but that meeting was cancelled and held sometime in December. The meeting that was held was described by an employee of the landfill as a special meeting of the Pierson Township Board at which the "remediation system" was presented and "the general public" was allowed to ask questions. Three Pierson Township officials claim that meeting was called for the purpose of discussing expansion of the landfill only and that the remediation plan was not discussed.[4]
 
 
 10
 The district court found that neither of these meetings provided an "opportunity for public comment concerning the selection of the response action" as required by the NCP. 40 C.F.R. § 300.700(c)(6). The district court found the first meeting did not provide an adequate opportunity for public comment because it was explicitly limited to a discussion of a proposed expansion and because no substantive discussion of the remediation plan took place. The district court found that the second meeting did not provide an adequate opportunity because it took place at least one month after Pierson Sand's cleanup plan had been "selected" by means of the consent judgment with MDNR.
 
 
 11
 In Amcast Indus. Corp. v. Detrex Corp., 779 F.Supp. 1519 (N.D.Ind.1991), reversed in part on other grounds, 2 F.3d 746 (7th Cir.1993), cert. denied, 114 S.Ct. 691 (1994), the court found a private CERCLA plaintiff to be in compliance with the NCP public participation requirements based on analogous activities. In that case, the plaintiff issued no formal notice of its cleanup plan but published notice of and invited public comment on an application for a National Pollutant Discharge Elimination System ("NPDES") permit which was related to its cleanup plan. The Indiana Department of Environmental Management ("IDEM") determined that no public hearing regarding the cleanup plan was necessary based on the lack of public response to the related NPDES permit. The court found that this decision of the IDEM demonstrated that the plaintiff had provided sufficient opportunity for public comment. Amcast, 779 F.Supp. at 1537.
 
 
 12
 Pierson Sand claims that the public comments received at its meetings and the subsequent adoption of the cleanup plan in conjunction with the MDNR are analogous and urges this court to adopt the Amcast court's reasoning. Other courts have required much more in the way of opportunities for public comment. See, e.g., Louisiana-Pacific Corp. v. Asarco Inc., 24 F.3d 1565, 1576 (9th Cir.1994), cert. denied, 115 S.Ct. 780 (1995) (finding compliance "not perfect but ... substantial" where plaintiff undertook four public meetings preceded by public notice in very thorough advertisements which were followed by similar meetings discussing a study and finally a decision regarding "selectoin of the remedial response").
 
 
 13
 The second meeting did not provide opportunity for public comment sufficient for compliance with the NCP. The notice for that meeting provided no indication that the remediation process would be discussed and, even if it had provided such indication, it neither indicated where the meeting was to be held nor correctly stated the date of the meeting. Taking the evidence in the light most favorable to Pierson Sand, as this court must on this appeal, it appears that concerned citizens and Pierson Township, "potentially responsible party" ("PRP"), took advantage of an opportunity to discuss the cleanup at that meeting. Nevertheless, that meeting could have provided no "opportunity for public comment concerning the selection of the response action," 40 C.F.R. § 300.700(c)(6), because the plan had already been "selected" by means of the consent judgment with MDNR.
 
 
 14
 The notice for the first meeting also failed to provide notice that opportunities to discuss the cleanup would be provided. That notice stated only that the meeting was for the purpose of discussing proposed expansion of the landfill. The transcript of that meeting indicates that the cleanup plan was discussed. The reasoning of the Amcast court would allow those incidental comments to serve as evidence of sufficient opportunities for public comment. The plaintiff in Amcast applied for a permit related to its cleanup and the court deemed the opportunities for public comment provided by notice of that application sufficient. Pierson Sand applied for an expansion permit related to (actually contingent on) its cleanup and received comment on its cleanup at the meeting held to discuss the permit application. However, the NCP requires more than these incidental opportunities for public comment. See County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1514 (10th Cir.1991) (requiring opportunity for public comment on response action itself despite PRPs opportunity to discuss cleanup in discussion of related "closure plan"); Amland Prop. Corp. v. Aluminum Co. of Am., 711 F.Supp. 784, 801 (D.N.J.1989) (requiring opportunity for "comment on either the cleanup standard or the remedial methods to be employed").
 
 
 15
 The reasoning of the Amcast court also fails in regard to the specific public notice requirements of the NCP.[5] The Amcast court excused compliance with such requirements because the plaintiff "was complying with legally applicable or relevant and appropriate state requirements [ ["ARARs") ]."[6] Amcast, 779 F.Supp. at 1538 (citing General Elec. Co. v. Litton Business Sys., Inc., 715 F.Supp. 949, 959 (W.D.Mo.1989), aff'd., 920 F.2d 1415 (8th Cir.1990), cert. denied, 499 U.S. 937 (1991)). Pierson Sand, also relying on General Electric, contends that the provision of opportunities for public comment was not necessary for the same reasons and because "the cleanup was performed under the supervision of the MDNR." Pierson Sand claims that the requirements of its consent judgment with MDNR are ARARs with which it complied. Pierson Sand then argues, "This ARAR compliance was a threshold, mandatory requirement under the NCP and CERCLA and effectively superseded Pierson Sand's CERCLA obligation, or Pierson Sand's ability, to consider other remedies or to provide an opportunity for public comment on the selection of one among several alternative remedies."
 
 
 16
 The requirements of the consent judgment can be considered ARARs only to the extent they are more stringent than federal standards. Akzo, 949 F.2d at 1440. To the extent that they do not require the same levels of public participation as the NCP, they cannot be considered more stringent than federal standards and thus cannot be said to supersede those federal standards. The structure of the NCP supports this position: 40 C.F.R. § 300.700(c)(5)(iii) requires that ARARs be identified and met and 40 C.F.R. § 300.700(c)(6) lists the public participation requirements applicable to private cleanups.
 
 
 17
 Pierson Sand also argues that "public participation" was not necessary because its cleanup was supervised by MDNR and the purpose of the NCP public comment requirements is to "ensure that these cleanups--which are performed without governmental supervision--are carried out in an environmentally sound manner." That is, Pierson Sand argues that because its cleanup was monitored by MDNR, a governmental agency, public comment was not necessary.[7]
 
 
 18
 While governmental supervision of a cleanup may provide some of the same guarantees as a cleanup subject to public comment and criticism, the NCP does not allow this type of substitution. "Public comment means just that, public comment. Negotiations between [a plaintiff] and MDNR officials do not constitute the public comment contemplated by the CERCLA regulations." Sherwin-Williams, 840 F.Supp. at 477 (citing 40 C.F.R. § 300.700(c)(6)(i)-(v)).
 
 
 19
 The NCP requires opportunities for public participation even when a government agency develops a cleanup plan itself. 40 C.F.R. § 300.430(f); see County Line, 933 F.2d at 1514-15 (remedial action involving EPA held not in compliance with NCP public comment provisions). In this case, some citizens were allowed to discuss their concerns about the cleanup but neither they nor PRPs had an opportunity to participate in the decisionmaking process that led to the cleanup plan at this landfill.[8]
 
 V.
 
 20
 A private plaintiff seeking recovery of costs under CERCLA must also demonstrate, as part of the prima facie case, that the defendants are within the classes of persons made subject to liability by 42 U.S.C. § 9607(a). 3550 Stevens Creek Assoc., 915 F.2d at 1358. Relying on Nurad Inc. v. William E. Hooper & Sons Co., 966 F.2d 837, 842 (4th Cir.), cert. denied, 113 S.Ct. 377 (1992), the district court found that Pierson Township could be subject to liability as an "operator," 42 U.S.C. § 9607(a)(1), of the landfill because the Township had the authority to control the operation of the landfill when it leased the property and contracted to have it operated for the Township.[9] The district court found that there were genuine issues of fact regarding whether Keeler and Chemetron were "arrangers," 42 U.S.C. § 9607(a)(3) for purposes of CERCLA liability. These issues are not material, of course, because Pierson Sand has failed to establish another element of its prima facie case, i.e., consistency with the NCP. Failure to prove an essential element of a plaintiff's case "necessarily renders all other facts immaterial." Celotex v. Catrett, 477 U.S. 317, 323 (1986).
 
 VI.
 
 21
 Pierson Sand contends that costs of investigation, monitoring and evaluation associated with the cleanup of the landfill are recoverable even if its cleanup is deemed to have failed to comply with the NCP. In Donahey v. Bogle, 987 F.2d 1250 (6th Cir.1993), vacated, 114 S.Ct. 2668 (1994), this court reasoned, "Although consistency with the NCP is a necessary element for recovery of remedial costs, it does not necessarily follow that consistency with the NCP is required for recovery of monitoring or investigative costs."[10] Id. at 1255 (citing Carlyle Piermont Corp. v. Federal Paper Bd. Co., 742 F.Supp. 814 (S.D.N.Y.1990) and Artesian Water Co. v. Gov't. of New Castle County, 851 F.2d 643 (3rd Cir.1988)). The court explicitly adopted the reasoning of Carlyle Piermont and remanded the case for an award of "initial investigation costs." Donahey, 987 F.2d at 1256.
 
 
 22
 An award of "preliminary" investigative costs may be recovered from "covered persons," 42 U.S.C. § 9607(a), even when there has not been compliance with the NCP and response costs are otherwise not recoverable. Carlyle Piermont, 742 F.Supp. at 821-22. "[T]he detailed NCP provisions governing other response actions cannot reasonably be applied to preliminary monitoring and evaluation of a release of hazardous substances." Carlyle Piermont, 742 F.Supp. at 821 (quoting Artesian, 659 F.Supp. at 1294.)
 
 
 23
 Only "initial" or "preliminary" investigative costs may be recovered despite failure to comply with the NCP. Any costs incurred after a cleanup has begun are recoverable only if incurred consistent with the NCP.[11] County Line, 933 F.2d at 1515. This court held that "initial investigation costs" are recoverable despite the failure to comply with the NCP. Donahey, 987 F.2d at 1256 (emphasis added).
 
 
 24
 Because investigative costs that are part of "response costs" must comply with the NCP, a plaintiff seeking investigative costs incurred prior to the response action must claim those "initial" costs and present "evidence showing divisible amounts of damages." County Line, 933 F.2d at 1515. In Donahey, 987 F.2d at 1255, this court remanded the case to the district court for an award of the initial investigation costs that had been shown at trial. In Artesian Water, 659 F.Supp. at 1286-87, 1294, the plaintiff demonstrated that separate investigative costs had been incurred. See also Carlyle Piermont, 742 F.Supp. at 821 (same). But see Amland, 711 F.Supp. at 796 n. 12 (allowing recovery even when "no specific dollar amount is set forth regarding these monitoring costs").
 
 
 25
 Pierson Sand may have incurred such preliminary investigative costs but made no separate claim for them and failed to present any separate evidence or calculations of those costs.[12] "To accept the [plaintiff's] belated attempt to salvage preclosure costs out of an adverse decision below on their unitary allegation of injury would require a remand and further evidentiary findings--proceedings which would undermine the just, speedy, and economical benefits of the summary judgment procedure." County Line, 933 F.2d at 1515 (citing Celotex, 477 U.S. at 327). Therefore, the request for such costs now is untimely.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The district court applied this "substantial compliance" standard of the NCP which became effective in 1990. Prior to 1990 the NCP required strict compliance. Relying on Amcast Indus. Corp. v. Detrex Corp., 779 F.Supp. 1519, 1536 (N.D.Ind.1991), reversed in part on other grounds, 2 F.3d 746 (7th Cir.1993), cert. denied, 114 S.Ct. 691 (1994), Pierson Township argues that the strict compliance standard should be applied to Pierson Sand, at least in regard to its actions between 1985 and 1990. In Amcast the district court found that the EPA intended the substantial compliance standard of the 1990 NCP to apply to those seeking response costs after its enactment, regardless of when those costs were incurred. Id. at 1537. But the Amcast court expressly refused to decide which standard applied because the result in that case would have been the same under either standard. Other courts have held that the substantial compliance standard applies to cleanups being undertaken when the 1990 NCP became effective. See Sherwin-Williams Co. v. City of Hamtramck, 840 F.Supp. 470, 476 (E.D.Mich.1993); Tri-County Business Campus v. Clow Corp., 792 F.Supp. 984, 990 (E.D.Pa.1992)
 
 
 [2]
 The E.P.A. has defined "public" for purposes of the NCP: "The public--both [potentially responsible parties] and concerned citizens--have a strong interest in participating in cleanup decisions that may affect them...." 55 Fed.Reg. 8795
 
 
 [3]
 The notice stated, "PUBLIC INVITED Monday, November 19, 1990, 7:00 p.m. Mr. Terry Hartman, DNR and Representative of Central Sanitary Landfill will respond to residents' questions and concerns regarding activity at CSL in Pierson Township."
 
 
 [4]
 These officials did not indicate on what date this meeting was held. No transcript of the meeting was prepared
 
 
 [5]
 These specific provisions are made applicable to private CERCLA plaintiffs by 40 C.F.R. § 300.700(c)(6)(iv) and are listed in 40 C.F.R. §§ 300.430(f)(2), (3), and (6). These requirements include the following activities which the record does not indicate were undertaken by Pierson Sand: preparation of a summary of a plan, publication of a notice of the availability of proposed plans, provision of opportunities for written comments, summaries of comments, and making the record of decision available before initiation of the plan
 
 
 [6]
 Under 42 U.S.C. § 9261(d)(2)(A), CERCLA requires that cleanups meet federal standards or any state standards that are "more stringent." Those undertaking private cleanups can comply with more stringent state standards when those state standards are deemed "applicable or relevant and appropriate" requirements ("ARARs"). A state standard or requirement may be deemed an ARAR "if it is (1) properly promulgated, (2) more stringent than federal standards, (3) legally applicable or relevant and appropriate, and (4) timely identified." United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1440 (6th Cir.1991)
 
 
 [7]
 The Amcast court found the involvement of the IDEM to be a sufficient substitute for public comment in a remedial action. 779 F.Supp. at 1538 (citing General Electric, 715 F.Supp. at 959)
 
 
 [8]
 Any argument that the meetings or the involvement of the MDNR provided sufficient opportunities for comment "based on substantially equivalent state and local requirements," 40 C.F.R. § 300.700(c)(6), must necessarily fail for the same reasons, i.e., even if these meetings were held in accordance with state and local requirements and the cleanup was undertaken with state supervision, the opportunities for comment were insufficient
 
 
 [9]
 Previously, the district court, ruling on Pierson Sand's motion for summary judgment had found that Pierson Township was an "operator" of the landfill. Ruling on the motion sub judice, the district court followed that reasoning and explicitly refused to reopen the prior decision
 
 
 [10]
 The Supreme Court remanded Donahey to this court for a reconsideration of the award of attorney's fees. Livingstone v. Donahey, 114 S.Ct. 2668 (1994). This court, sitting en banc, reheard Donahey on December 6, 1995. The original Donahey opinion conflicted with this court's opinion in United States v. Cordova Chem. Co., 59 F.3d 584 (6th Cir.), reh'g. granted and vacated, 67 F.3d 586 (6th Cir.1995), on issues of corporate liability. This court has also recently reheard Cordova. In light of this conflict and the remand from the Supreme Court, this court's previous resolution of the issues in Donahey is subject to reconsideration. It appears unlikely, however, that there will be a change in this court's resolution of the issue sub judice--that investigative costs are recoverable despite a failure to comply with the NCP--because neither the Supreme Court remand nor the conflict with Cordova relate to this issue
 
 
 [11]
 A private party may only recover "response costs" that are "consistent with the national contingency plan." 42 U.S.C. § 9607(a). A "response" is defined as a removal or remedial action. Id. § 9601(25). A "removal action" includes "actions as may be necessary to monitor, assess, and evaluate the release...." Id. § 9601(23). A "remedial action" includes "any monitoring reasonably required...." Id. § 9601(24)
 
 
 [12]
 Pierson Sand was required to undertake just this sort of "initial" or "preliminary" investigation in an attempt to determine the nature of the hazardous wastes in the landfill. For example, "monitoring wells" have been installed at and around the landfill