C & C MILLWRIGHT MAINTENANCE COMPANY, INC., Plaintiff,

v.

TOWN OF GREENEVILLE, TENNESSEE, Defendant and Third–Party Plaintiff,

v.

WEAVEXX CORPORATION, et al., Third–Party Defendants.

No. 2:92–cv–487.

United States District Court, E.D. Tennessee, Northeastern Division.

Nov. 23, 1996.

J. Ronnie Greer, Greeneville, TN, for Plaintiff.

Ronald W. Woods, Milligan & Coleman, Greeneville, TN; William N. Penny, and John E. Quinn, Manier, Herod, Hollabaugh & Smith, Nashville, TN; and Jerry L. Goodson, Armitage & Goodson, Greeneville, TN, for Defendant and Third–Party Plaintiff.

James C. Wright, Butler, Vines & Babb, Knoxville, TN; Stephen G. Anderson, Baker, Donelson, Bearman & Caldwell, Knoxville, TN; and James W. Gentry, Jr., Spears, Moore, Rebman & Williams, Chattanooga, TN, for Third–Party Defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action came on for a hearing on Friday, November 15, 1996, on the defendant town's motion for partial summary judgment [doc. 58]. The court having considered the written material submitted in support of and in opposition to the motion, and having heard the arguments of counsel for the plaintiff and the defendant, the court is prepared to rule on the issue presented by the motion.

The plaintiff seeks relief against the defendant town for the plaintiff's "necessary costs of response incurred ... consistent with the national contingency plan" with respect to a specified site, under 42 U.S.C.A. § 9607(a)(4)(B), part of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (CERCLA). In moving for partial summary judgment, the defendant argues that the plaintiff is barred from recovering most or all of its response costs incurred with respect to the site because the plaintiff did not incur these costs in a manner consistent with the national contingency plan, or NCP. In particular, the moving defendant points to the plaintiff's failure to provide an opportunity for public

comment concerning the selection of a remedy for cleaning up the site which is the subject of this civil action.

CERCLA required revision of the NCP originally prepared and published pursuant to 33 U.S.C.A. § 1321, "to reflect and effectuate the responsibilities and powers created" by the act. 42 U.S.C.A. § 9605(a). Section 9605(a)(2) and (3) mandate that the NCP include "at a minimum" "methods for evaluating, including analyses of relative cost, and remedying any releases or threats of releases from facilities which pose substantial danger to the public health or the environment," and "methods and criteria for determining the appropriate extent of removal, remedy, and other measures authorized by [CERCLA]."

The NCP, called more formally the National Oil and Hazardous Substances Pollution Contingency Plan, appears among Environmental Protection Agency regulations at 40 C.F.R. §§ 300.1–300.920. In accordance with CERCLA, the NCP distinguishes between two kinds of response: removal and remedial action. With respect to removal, the NCP provides,

> As defined by section 101(23) of CERCLA, remove or removal means the cleanup or removal of released hazardous substances from the environment; such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment; such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances; the disposal of removed material; or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare of the United States or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 104(b) of CERCLA [concerning investigations, monitoring, surveys, testing, and other information gathering undertaken by the President of the

United States], post-removal site control, where appropriate, and any emergency assistance which may be provided under the Disaster Relief Act of 1974. For the purposes of the NCP, the term also includes enforcement activities related thereto.

40 C.F.R. § 300.5.

Remedial action, on the other hand, is defined to mean "those actions consistent with permanent remedy taken instead of, or in addition to, removal action in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* The comprehensive term, response, "as defined by section 101(25) of CERCLA, means remove, removal, remedy, or remedial action, including enforcement activities related thereto."

In giving effect to CERCLA's provision, in 42 U.S.C.A. § 9607(a)(4)(B), for private-party cost-recovery actions such as this one, the NCP provides that "[a] private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (5) and (6) of this section, and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). Paragraph (6), specifically 40 C.F.R. § 300.700(c)(6), provides in part,

> Private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action based on the provisions set out below, or based on substantially equivalent state and local requirements. The following provisions of [the NCP] regarding public participation are potentially applicable to private party response actions, with the exception of administrative record and information repository requirements stated therein. . . .

The paragraph lists as potentially applicable to private-party response actions §§ 300.155, 300.415(n), 300.430(c) except paragraph (c)(5), 300.430(f)(2), (3) and (6), and 300.435(c). This is consistent with 40 C.F.R. § 300.155(c), which provides in part, "The

community relations requirements specified in §§ 300.415, 300.430, and 300.435 apply to removal, remedial, and enforcement actions...."

40 C.F.R. § 300.415(n) requires in removal, as opposed to remediation, response actions certain community relations activities, including provisions for public comment periods, with the details of the required community relations activities in a particular case being dependent on whether the anticipated period before on-site removal activity must begin is less than six months or six months or longer. *Compare* § 300.415(n)(2) and (4). The community relations requirements applicable to remediation actions, 40 C.F.R. §§ 300.430(c) and 300.435(c), are much more extensive.

In support of its motion for partial summary judgment, the defendant town submits affidavit evidence to show that

the Plaintiff has never held any public hearings on this matter. There has never been any public meetings or notices concerning the removal action nor an opportunity for the public to comment. Neither the Plaintiff nor any other entity has provided any notice in the newspaper or other media concerning the removal and/or selection of a final remedy.

5. To my knowledge, the Plaintiff has never established a formal community relations plan, nor has it provided a notice of availability and brief description of the engineering evaluation and cost analysis or its equivalent.

6. To my knowledge, the Plaintiff has not provided an opportunity of public comment concerning the selection of the response action.

[Doc. 58, ex. 1 at 2.] There is no factual dispute in this case concerning this; in response to the motion for partial summary judgment, the plaintiff states:

Plaintiff acknowledges that consistency with the national contingency plan (NCP) is an essential element of a private Plaintiff's prima facie case under CERCLA, with the exception of removal actions as defined in 42 USC § 9601(23) [actions taken in response to an immediate threat to the public welfare or environment] and monitoring and investigative costs. Plain-

tiff, likewise, acknowledges that among the applicable requirements of the NCP is "an opportunity for public comment concerning the selection of the response action." Plaintiff further concedes that no public hearings or public meetings have been provided.

[Doc. 70 at 1–2 (citation omitted).]

■ The plaintiff relies on *Channel Master Satellite Systems, Inc. v. JFD Electronics Corp.,* 748 F.Supp. 373 (E.D.N.C.1990), to argue that its failure to act in a manner consistent with the NCP with respect to community relations concerning its response to any release of a hazardous substance at the site which is the subject of this civil action does not bar it from recovering its costs incurred in removal, as opposed to costs incurred in remedial action. In *Channel Master,* however, the District Court for the Eastern District of North Carolina rejected the plaintiff's argument that its response had been a removal and not a remedial action, and held in the alternative that even if the response had been a removal, the plaintiff failed to carry the burden of showing substantial compliance with the NCP. In its alternative holding, the district court did not hold that had the response been a removal, no NCP community relations requirement would have applied.

■ Indeed, as the court's review above of the applicable regulations shows, there cannot be such a holding consistent with the NCP. Community relations requirements are diminished, but not abolished, in a situation in which removal, described accurately by the plaintiff as "actions taken in response to an immediate threat to the public welfare or environment," is required. Furthermore, as the ruling in *Channel Master* shows, there is another reason why the court must reject the plaintiff's argument on this point: the plaintiff has failed to show that the costs it seeks to incur were for removal instead of for remedial action.

In *Channel Master,* the district court noted, 748 F.Supp. at 385, "The courts have consistently found that the removal category was to be used in that limited set of circumstances involving a need for rapid action,

while non-urgent situations are to be addressed as remedial actions." The Channel Master court found no indications of such urgency in the case before it, noting that the site in question "did not pose an immediate risk of harm to public health or the environment," there being no evidence that the plaintiff had undertaken an analysis which identified an urgent or immediate risk, or that the plaintiff had been told that conditions at the site presented a threat of imminent harm. Id. The court took into account as factors establishing that the plaintiff's action had been remedial the cost of the plaintiff's response, the duration of the response action, the absence of a need for immediate action, and the fact that "a permanent rather than interim remedy was implemented." Id. at 386. The district court rejected the plaintiff's expert's conclusion to the contrary, noting that CERCLA's distinction between removal and remedial action is an issue of law, not a scientific issue, and that "the presence of an actual or potential release" is not a sufficient basis for finding that a response was a removal because it "is the threshold predicate for all actions under CERCLA, and thus [the expert's] conclusion transforms all cleanups into removals, a result which is inconsistent with CERCLA and the NCP." Id. at 386–87 (citations omitted).

■ In the case at bar, the plaintiff has not responded to the defendant town's motion for partial summary judgment with any evidentiary material, stating in its response that "a full evidentiary presentation of the expenses for which Plaintiff seeks recovery will be necessary at trial to allow the Court to determine whether the costs sought are recoverable." [Doc. 70 at 3.]

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).[1] In this case, in which the plaintiff seeks to absolve itself of any responsibility for community relations under the NCP by characterizing the response which is the basis of its cost-recovery action as a removal, the burden of showing facts to support such a characterization must rest on the plaintiff. This is consistent with the plaintiff's more general burden "in a cost recovery action such as this, ... to establish, as an essential element for recovery that, inter alia, the response costs for which it seeks compensation were 'consistent' with the NCP." Channel Master, supra, 748 F.Supp. at 381 (citations omitted).[2] In the absence of any evidence to suggest that the plaintiff might carry its burden of proof in this regard, the moving defendant is entitled to summary judgment precluding any recovery of costs on the ground that such costs were incurred in a CERCLA removal. See Celotex Corporation v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (when the nonmoving party bears the burden of proof at trial on a dispositive issue, the moving party need not support its motion with affidavit evidence, but the nonmoving party must show through some evidentiary means specific facts which establish a genuine issue for trial). To the extent that the plaintiff's response action was remedial, this court must recognize, as does the plaintiff, that "[c]ourts have ... consistently held that failure to provide public comment opportunity renders remedial action inconsistent with the NCP and bars recovery of costs." Pierson Sand & Gravel, Inc. v. Pierson Township, 851 F.Supp. 850, 856 (W.D.Mich.1994), affirmed, 89 F.3d 835 (6th Cir.1996) (table) (citations omitted).

---

1. In response to the defendant town's motion for partial summary judgment, the plaintiff has neither made nor supported a Fed.R.Civ.P. 56(f) motion for additional time within which to gather evidence with which to oppose the motion for partial summary judgment.

2. See also Donahey v. Bogle, infra, 987 F.2d at 1255.

This leaves for decision the plaintiff's contention that at least some of its response costs are recoverable regardless of noncompliance with the NCP's community relations requirements, on the ground that the recoverable costs are monitoring or investigative costs. It is correct that in *Donahey v. Bogle,* 987 F.2d 1250 (6th Cir.), *cert. denied, sub nom. Donahey v. Livingstone,* 510 U.S. 1024, 114 S.Ct. 636, 126 L.Ed.2d 594 (1993), *cert. granted, vacated and remanded on other grounds, sub nom. Livingstone v. Donahey,* —— U.S.——, 114 S.Ct. 2668, 129 L.Ed.2d 805 (1994), the Court of Appeals for the Sixth Circuit held, "Although consistency with the NCP is a necessary element for recovery of remedial costs, it does not necessarily follow that consistency with the NCP is required for recovery of monitoring or investigative costs." *Id.* at 1255 (citations omitted). However, in its recent unpublished opinion in *Pierson Sand & Gravel, Inc. v. Pierson Township,* 89 F.3d 835 (table), 1996 WL 338624 (6th Cir.1996), the court of appeals elaborated on this exception to the requirement of NCP compliance, explaining that "[o]nly 'initial' or 'preliminary' investigative costs may be recovered despite failure to comply with the NCP. Any costs incurred after a cleanup has begun are recoverable only if incurred consistent with the NCP." *Id.,* 1996 WL 338624 at **6 (citation omitted) (footnote omitted). In a footnote, the court of appeals noted that CERCLA's definitions of "removal action" and "remedial action" include references to monitoring, *id.* n. 11, further limiting the broad language used in *Donahey v. Bogle, supra.*

For the reasons stated, the court must, as the court stated at the conclusion of the hearing on the defendant town's motion for partial summary judgment, grant the motion. The court finds that there is no genuine issue of material fact concerning the plaintiff's noncompliance with the NCP in this case, and that the plaintiff may not excuse such noncompliance in this case on the ground that its response at the site which is the subject of this civil action was a removal, not a remedial action. As a matter of law, the plaintiff's recovery of response costs incurred in this case is limited to its preliminary or investigative costs incurred before the com-mencement of any cleanup on the site. The court will therefore enter a partial summary judgment in favor of the defendant town and in accordance with this memorandum opinion.

### ORDER

For the reasons stated in the court's memorandum opinion filed with this order, the court finds the defendant Town of Greeneville's motion for partial summary judgment [doc. 58] well taken, and it is **GRANTED.** It is **ORDERED** that the plaintiff's recovery in this civil action of costs incurred under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, is limited to its preliminary or investigative costs incurred before the commencement of any cleanup on the site which is the subject of this civil action.